ANTHONY VIOLA, JR. *vs.* THOMAS A. CAHIR *et al.,*
BOARD OF CANVASSERS AND REGISTRATION.

OCTOBER 30, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

---

PER CURIAM. This is a petition for mandamus to the members of the board of canvassers and registration of the city of Providence to certify certain persons described in such petition as eligible to sign caucus nomination papers for proposed candidates of the democratic party to be voted upon in a caucus of that party in the thirteenth ward of that city on June 19, 1944.

We allowed the petition to be filed and ordered citation to issue to the respondents to appear before us on June 14, 1944 and show cause, if any they had, why the prayer of the petitioner should not be granted. Respondents duly appeared in response to the citation and, by counsel, objected to the granting of the petition, on the ground that the persons described in the petition were ineligible to sign such nomination papers, solely because they had voted in a cau-

cus of the democratic party within twenty-six calendar months. In support of this contention they cited the second sentence of the first paragraph of §10, chapter 316, general laws 1938, which reads as follows: "No person who has voted in the caucus of any political party shall be eligible to sign any nomination papers containing final or caucus nominations of candidates within 26 calendar months thereafter."

Petitioner contended that such sentence, as written, was not the law of the state, because the words "final or caucus" before the word "nominations" had been interpolated by the commission on revision of the general laws without legislative sanction. He further contended that the last legislative action on this subject was taken in 1930 when the legislature enacted chap. 1515, P. L. 1930. In sec. 6 of that chapter the second sentence of the first paragraph reads: "No person who has voted in the caucus of any political party shall be eligible to sign any nomination papers containing nominations of candidates within twenty-six calendar months thereafter." Petitioner argued that the sentence as above written remains the law of the state and does not apply to nominations *for* candidates to be voted upon at a caucus of a political party but only to nominations *of* candidates to be voted upon at the election.

Respondents reject such contention and argue that the revision of 1938, by virtue of the provisions of P. L. 1938, chap. 2600, is the statute law of the state and that they are, therefore, bound to follow the law as it is therein written and not any legislative provisions enacted prior thereto. The position which the respondents have taken is understandable. They cannot be expected to question the law as it is written. It is for the one claiming contrary to the revision to show that what purports to be the law in the revision is not the authentic law of the state. Petitioner has undertaken this duty by bringing this proceeding.

His contention has raised a serious question of the validity of §10 of chap. 316 as it now appears in the general re-

vision of 1938. The alteration which appears in the printed revision by the insertion in that section of the words "final or caucus" before the word "nominations" in the second sentence of the first paragraph may be considered from two different points of view. If it is clear, as respondents argue, that the revision changed the law and if it appears that such was the intention of the commission on revision and that it did not call such change to the attention of the legislature in its report, then such change is not an authentic act of the legislature. If, however, it appears from a consideration of the whole section that the commission merely undertook to clarify existing law without intending to effect any change in its meaning, then the language which the commission used for that purpose should be so construed as to give effect to that purpose only.

After careful consideration we are of the opinion that the commission did not intend to recommend a change in the meaning of the second sentence of the first paragraph of P. L. 1930, chap. 1515, sec. 6, when they inserted therein the words "final or caucus" as they now appear in such sentence in the printed revision. G. L. 1938, chap. 316, §10. It is apparent upon close examination of the excisions and insertions which the commission made elsewhere in that paragraph that it was trying to rephrase the language of the paragraph to more clearly express its meaning. That object was accomplished in the first sentence by inserting therein after the word "office" the words "or has signed caucus nomination papers for candidates of any other political party", and by inserting the word "final" after the word "signed", where it first appears in the sentence. But, in making the insertions in the second sentence, the commission apparently overlooked the necessity of inserting the word "such" before the word "final". That insertion would have made clear what was obviously intended by the whole section, namely, to prohibit adherents of one political party from intruding themselves into the internal concerns of *another* political party whether by voting in its caucus, sign-

ing caucus nominations for its candidates, or signing final nomination papers of its candidates to be voted upon at the election.

The various prohibitions contained in §10 are designed to accomplish that purpose. They are not designed to limit or circumscribe the freedom of action of adherents of a political party within such party. The intention of the legislature in this regard is, it seems to us, put beyond question by the last sentence of the second paragraph of §10, which reads: "But a person so signing a list of caucus nominations shall be deemed to have taken part in his own party caucus, and shall be debarred from taking part in the caucus of the opposite political party for a period of 26 calendar months thereafter." Here we have the key to the intention of the legislature. Taking part in a party caucus or signing caucus nomination papers was made a bar to taking part in the caucus of *another* political party within twenty-six calendar months thereafter.

Throughout the section the emphasis is on prohibiting participation in the caucus of the opposite political party. The commission recognized this purpose in its revision of the language of the section in every instance but the second sentence of the first paragraph now under consideration. In view of that fact and of the further fact that it had no authority to change the law, we assume that the commission did not intend to act beyond the limits of its authority and, therefore, that its rephrasing of the second sentence was an oversight which escaped detection in the editing of the final draft of the revision that was submitted to the legislature for adoption.

That the above conclusion is reasonable is, in our opinion, borne out by the official action of the commission as disclosed by its revision. When it was reported to the legislature for adoption, there was appended thereto a list of the public laws which had been enacted since the revision of 1923 and which had been thereafter repealed. Such list appears in P. L. 1938, chap. 2600, now G. L. 1938, chap. 658,

§12. Public laws 1930, chap. 1515, with which we are concerned here, is not included therein, showing, we take it, that the commission did not consider that it had changed the existing law by its rephrasing of sec. 6 of that chapter.

Furthermore, there was published in connection with the revision a "Reference Table to The General Laws Revision of 1923 and subsequent public laws to the Revision of 1938", in which it was expressly declared that: "The purpose of this table is to show the disposition of each section and chapter of the General Laws, Revision of 1923, and of each section and chapter of the subsequent Public Laws, from the January session, 1923, to the January session, 1938, both inclusive, thus serving as a means of tracing, in the General Laws, Revision of 1938, the letter and substance of the provisions of previous law. The omission of provisions of the old law, and the reason for such omission is indicated by the following letters: . . . ." A list of symbols of identification is then given but we need not quote them here. It is sufficient to say that at page XXXI, where P. L. 1930, chap. 1515, sec. 6, appears, there is no symbol to indicate any change in such section. The sole reference is that sec. 6 is now §10, chap. 316, G. L. 1938.

Needless to say the preparation of a general revision of the statute law is a monumental undertaking. The proper performance of the task calls for almost infinite patience and industry and also the utmost care and vigilance. The purpose of such a revision is not to change the substance of the statutes but to rearrange, rephrase or consolidate them and in some instances to do all three, so as to bring into some recognizable order the mass of new laws and repealing and amending acts which have accumulated since the last previous revision. Such a task cannot readily be done by the legislature, absorbed as it is at each session with current legislative business. Hence, it has been the long-continued custom in this state to delegate this work to a special commission, as was done in the case of the general revision of 1938.

Such a commission is not empowered to change the law. It does not have the power to draft and recommend legislation as does a committee of the house of representatives or of the senate. Its province is to codify the statutes. If, in its opinion, the occasion seems to call for such action, it may rephrase the language of the existing law in order to make clearer its meaning. This is not strictly legislating, as the law, although rephrased, remains the same. But, as every revision necessarily involves considerable action of this kind and such action partakes in some degree, at least superficially, of the legislative process, it has been the invariable custom of the legislature formally to enact the revision, but not because it contains or is intended to contain new legislation.

However, if the commission finds that an existing statute should be amended or repealed, in order to avoid an apparent ambiguity or inconsistency created by later legislation and not provided against by such legislation, the commission should, if it undertakes to remove such ambiguity or inconsistency, call to the attention of the legislature the specific change which it proposes so that the legislature may formally enact such legislation when adopting the revision. In the absence of such notice mere enactment of the revision by the legislature would not change existing law.

That this must necessarily be so becomes, upon reflection, quite clear. When the legislature receives the report of a commission which it has appointed solely to draft a revision of the laws, it may well assume that the commission has done only what it was authorized to do. The truth of the matter is that much must be taken on faith by the legislature in adopting such a general revision of the laws. That errors therein may pass undetected by it at such time is not surprising to those who have any knowledge of the legislative practice in the consideration of such a revision. The consideration which is given to bills in the ordinary course of legislative procedure, both in committee and on the floor of each house, cannot in the very nature of things

be given to a revision of the entire body of the general statute law of the state. A whole legislative session devoted solely to such a revision would not suffice for adequate consideration of it, if the assumption was that changes of phraseology therein could be construed to be new legislation.

There is, therefore, sound reason for the presumption which obtains generally that a general revision of the statutes of a state does not change the existing law, unless an intention to make such change clearly appears. 59 C. J. 894. In the instant case such an intent does not clearly appear. On the contrary we are of the opinion that it is the intent of the second sentence of the first paragraph of §10 to provide merely that no person who has voted in the caucus of a political party shall be eligible to sign any nomination papers containing final or caucus nominations of candidates of *another* political party within twenty-six calendar months thereafter. Hence the persons described in the instant petition must be accepted by the respondents as eligible in the above respect to sign the petitioner's caucus nomination papers.

Inasmuch as this petition has been disposed of by our rescript heretofore filed,[1] no further order is now required.

*Aram A. Arabian, Joseph Mainelli,* for petitioner.

City Solicitor *William E. McCabe,* Assistant City Solicitor *Irving Winograd,* for respondents.

---

[1]June 15, 1944. In the above-entitled case, upon consideration of the arguments of the parties, we have come to the conclusion that the legislature did not intend, by general laws 1938, chapter 316, §10, to prohibit an otherwise eligible elector of a political party from signing nomination papers for proposed candidates to be voted on at a caucus of the same political party, merely because such elector had, within twenty-six calendar months, voted at a caucus of the same political party. Our opinion will follow at a later date.

The prayer of the petition is granted and the writ of mandamus may issue returnable forthwith.