D. THOMAS TESTA *et al. vs.* MAXWELL W. WALDMAN *et al.*

JULY 5, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

POWERS, J. This is a petition for certiorari brought by the petitioners, in their capacity as members of the commission on horse racing and athletics, hereinafter called the commission, to review and quash the decision of the re-

spondents, in their capacity as members of the racing and athletics hearing board, hereinafter referred to as the respondent board, altering and modifying the assignment of racing dates fixed by the commission. We issued the writ and pursuant thereto the respondent board has duly certified the pertinent records to this court.

It appears therefrom that on February 8, 1961 the Narragansett Racing Association, Inc. filed with the commission an application requesting permission to conduct horse racing at its track, known as Narragansett Park, for a total of 60 days, specifically September 4 through October 7 and November 6 through December 9, 1961, Sundays excluded.

On February 14, 1961, Burrillville Racing Association applied to the commission for a total of 115 days, requesting specifically February 18 through April 15, July 3 through August 12 and September 2 through October 7, 1961, Good Friday and Sundays excluded.

Both applications were made pursuant to the provisions of G. L. 1956, §41-3-4, which read as follows:

"Any person, association or corporation desiring to conduct horse racing within this state shall apply to the commission for a license on forms provided by the commission. Such application shall specify the days on which such horse racing is to be conducted, the location of such horse racing and such other information as may be required by the commission. Said commission may also require any person, association or corporation to give information as to financial standing and credit. The commission shall have the right to reject any applications for a license for any cause which it may deem sufficient and the action of the commission both as to the license and the date or award shall be final, subject to the right of appeal provided by chapter 2 of this title. The commission shall, as far as practicable, avoid conflicts in the dates assigned or awarded for horse racing in the state."

The record further discloses that the application of Burrillville Racing Association for the first period commencing

February 18, 1961 was approved and the association conducted racing at its track, known as Lincoln Downs, for a total of 46 days, inclement weather forcing cancellation on two of the authorized days.

No further action was taken until, in response to a letter from the commission, the officials of Narragansett and Burrillville met with them on March 28, 1961 in an effort to adjust the conflict in dates requested by both tracks for September. This conference failed to bring about an amicable agreement and on March 31, 1961 the commission awarded Narragansett a total of 57 days commencing Monday, October 9 through December 13, 1961 and awarded to Burrillville a total of 30 days, from September 4 through October 7, 1961.

On April 6, 1961 Narragansett appealed to the respondent board, relying on G. L. 1956, §41-2-3, the provisions of which are as follows:

> "The commission on horse racing and athletics may in the first instance make such decisions and issue such orders as may to it seem proper in the administration of the provisions of laws that shall be from time to time assigned to its direction by the governor. Any person or persons aggrieved by a decision or order of the commission on horse racing and athletics shall have the right to appeal to the racing and athletics hearing board by filing an appeal in writing with said board within seven (7) days from the service of the order or decision appealed from."

A hearing was had before the respondent board on April 13 and 14, 1961 at which time Narragansett, Burrillville and the commission introduced evidence bearing on the controversy in issue. On April 25 the respondent board rendered its decision altering the assignment of dates fixed by the commission and awarding to Burrillville a total of 24 days beginning Monday, September 4, and ending on Saturday, September 30, 1961. It awarded to Narragansett a total of 60 days, beginning Monday, October 2, and run-

ning through Saturday, December 9, 1961. Within seven days the commission applied to this court for a writ of certiorari in accordance with the provisions of G. L. 1956, §41-2-6. That section reads as follows:

"The commission on horse racing and athletics or any party in interest, if aggrieved by a decision of said board shall have the right, within seven (7) days from the date of the decision of said board, to petition the supreme court of the state of Rhode Island for a writ of certiorari to review any questions of law involved. The petition for a writ of certiorari shall set forth the errors claimed. Upon the filing of a petition for a writ of certiorari for such review in the office of the clerk of the supreme court, the supreme court shall cause to be issued a writ of certiorari to the racing and athletics hearing board which shall require said board to certify to said court a transcript of the evidence, a complete record of the hearing, and a copy of the decision of said board."

The writ was issued, and we permitted Burrillville Racing Association to intervene as a party since it was aggrieved by the decision of the board reducing the total number of days awarded to it from 30 to 24. Narragansett Racing Association, Inc. was permitted to file a brief amicus curiae and in its brief contends that the commission is not an aggrieved party and has no standing in these proceedings. Whether such contention has merit is immaterial, since Burrillville Racing Association is a proper party and has adopted the commission's brief as its own.

The commission and the intervenor make two contentions. The first is that the respondent board was without jurisdiction to hear the appeal of Narragansett Racing Association, Inc. from the commission on horse racing and athletics award of racing dates and to award different dates. They challenge the board's jurisdiction on the ground that the words, "subject to the right of appeal," as they appear in G. L. 1956, §41-3-4, are lacking in legislative sanction in that they were inserted by the statute consolidation com-

mission; that such insertion constituted a change in the substantive law; and that such change was not called to the notice of the general assembly. They rely on *Viola* v. *Cahir,* 70 R. I. 394, wherein we held that any such purported change was not an authentic act of the legislature.

The board argues, however, that the statute consolidation commission was simply clarifying existing law, and it also relies on the *Cahir* case for holding that if the said commission merely undertook to clarify existing law without intending to effect any change in its meaning, then the language used for that purpose should be so constructed as to give effect to that purpose only.

In passing on this contention a review of the statutory history relating to the licensing of horse racing in this state is advisable, if not imperative, for a proper understanding of the issue involved.

The first applicable statute to be enacted was P. L. 1934, chap. 2086. It created a three-man commission which was vested with authority to supervise racing in this state and provided, inter alia:

"Sec. 6. No person, association or corporation shall hold or conduct any meeting within the state of Rhode Island whereat horse racing shall be permitted for any stake, purse or reward, except such person, association or corporation as shall be licensed by the commission as hereinafter provided."

"Sec. 10. Any person, association or corporation desiring to conduct horse racing within this state shall apply to the commission for a license on forms provided by the commission. Such application shall specify the days on which such horse racing is to be conducted, the location of such horse racing and such other information as may be required by the commission. Said commission may also require any person, association or corporation to give information as to financial standing and credit. Such application for a class A [horse running races, so called] license shall be filed on or before the fifteenth day of February in any year and the com-

mission having considered the applications shall on or before the first day of April in any year assign or award all dates for racing within the state of Rhode Island for the current year; *provided, however,* that the commission in its discretion may receive applications at a later date and may change such assignment or award if in its judgment such change is found necessary, but prior to making such change it shall print a public notice in the newspapers and shall give the party aggrieved by such change an opportunity to be heard. The commission shall have the right to reject any applications for a license for any cause which it may deem sufficient and the action of the commission both as to the license and the date or award shall be final. The commission shall, as far as practicable, avoid conflicts in the dates assigned or awarded for horse racing in the state."

The commission as originally created was abolished by P. L. 1935, chap. 2250, cited as the "Administrative Code Act." It created a department of taxation and regulation, later changed to revenue and regulation, within which department was established a division of horse racing. It consisted of a chief of said division, a superintendent of licenses and a superintendent of inspection. These three officers constituted a board which was vested with the licensing authority previously held by the commission.

In 1938, the 1934 statute and all changes to date were included as chapter 12 of the revision of that year. G. L. 1938, chap. 12. Sections 6 and 10 of that statute are identical with sections 6 and 10 of P. L. 1934, chap. 2086.

The next significant change made by the legislature occurs in P. L. 1939, chap. 660, cited and known as the "Administrative Act of 1939." It created a department of business regulation. Section 2 thereof provides:

"All the administrative powers and duties heretofore vested by law in the several state departments, boards, divisions, bureaus, commissions and other agencies shall be vested in the following departments and other

agencies which are specified in this act: * * * (h) Department of Business Regulation * * *."

The director of said department is authorized by sec. 120 to "carry out, except as otherwise provided by this act, the provisions of chapter 12 of the general laws of 1938 * * *." The exception relates to the imposition of and accounting for taxes. Section 121 provides, "It shall be the function of the department of business regulation * * * (d) to regulate and control horse racing * * *."

By the provisions of sec. 123 the director, with the approval of the governor, was authorized to appoint a racing and athletics administrator who "may in the first instance make decisions and issue orders, subject to appeal to the racing and athletics hearing board." Section 127.

The hearing board thus referred to was created by sec. 126 of the act, said section providing, "Within the department of business regulation there shall be a racing and athletics hearing board which shall function as a unit independent of the director and not subject to his jurisdiction." The board consisted of three members appointed by the governor.

The powers and duties of the administrator and of the hearing board were further set forth and clarified by P. L. 1940, chap. 821, sec. 2. That section provided:

"Section 127 of said chapter 660 of the public laws, as amended, is hereby further amended to read as follows:

" 'Sec. 127. The racing and athletics administrator may in the first instance make such decisions and issue such orders as may to him seem proper in the administration of the provisions of laws that shall be from time to time assigned to his direction by the director of business regulation. Any person or persons aggrieved by a decision or order of the racing and athletics administrator shall have the right to appeal to the racing and athletics hearing board by filing an appeal in writing with said board within seven days from the service of the order or decision appealed from. Upon an ap-

peal being taken from any such decision or order, the racing and athletics hearing board shall hold and conduct hearings thereon to be governed by rules to be adopted by said board, and in such hearings the board shall not be bound by technical rules of evidence. Said board shall sit as an impartial, independent body in order to make decisions affecting the public interest and private rights. It shall hear all appeals *de novo* as to both the law and the facts and its decisions shall be based upon the law and upon the evidence presented to it by the racing and athletics administrator and by the parties in interest. The concurrence of a majority of said board shall be sufficient for any decision. The racing and athletics administrator or any party in interest, if aggrieved by a decision of said board shall have the right, within seven days from the date of the decision of said board, to petition the supreme court of the state of Rhode Island for a writ of certiorari to review any questions of law involved. The petition for a writ of certiorari shall set forth the errors claimed. Upon the filing of a petition for a writ of certiorari for such review in the office of the clerk of the supreme court, the supreme court shall cause to be issued a writ of certiorari to the racing and athletics hearing board which shall require said board to certify to said court a transcript of the evidence, a complete record of the hearing, and a copy of the decision of said board. Notwithstanding the provisions of section 249 hereof, or other provisions of laws, the procedures established by this section shall constitute the exclusive remedies for persons aggrieved by any order or decision of the racing and athletics administrator or of the racing and athletics hearing board.' "

It thus seems clear to us that by the provisions of P. L. 1939, chap. 660, and P. L. 1940, chap. 821, the right of finality in the assignment or fixing of racing dates as was held by the original commission and the board which succeeded thereto by the creation of the division of horse racing ceased to exist and the licensing power became subject to appeal, as set forth in G. L. 1956, §41-3-4.

Although as a legislative fact such hearing boards are not ordinarily vested with super licensing jurisdiction, the instant situation is not unparalleled in this state. Public laws 1939, chap. 660, also vests within the department of business regulation, and an administrator within said department, the granting of alcohol beverage licenses. In strikingly similar language, the administrator was authorized to issue licenses *in the first instance,* subject, however, to appeal to a hearing board, which in turn was created by P. L. 1939, chap. 660, and amended by P. L. 1940, chap. 821.

Whereas in the case of the liquor control hearing board, now G. L. 1956, chap. 3-3, jurisdiction on appeal from the administrator was limited to five specific instances, the jurisdiction of the respondent board on appeals is unlimited. Significantly, however, the appellate jurisdiction of the liquor control hearing board does include licensing authority.

By the provisions of P. L. 1946, chap. 1746, jurisdiction of racing and athletics within the department of business regulation and the office of administrator was abolished by creating within the executive department a three-man commission appointed by and serving at the pleasure of the governor. This act, however, merely transferred the jurisdiction, prerogative, duties and powers of the director and administrator to the commission and in no wise affected the composition or jurisdiction of the hearing board, which was created independent of the department of business regulation. This is clearly expressed in the following language in section 1 of the act:

> "Said commission shall supervise the enforcement of all laws relating to the regulation and control of horse racing and athletics, and may in the first instance make decisions and issue orders, subject to appeal to the racing and athletics hearing board."

The petitioners' first contention is without merit. The statute consolidation commission did not intend to make a substantive change by the insertion of the words, "subject

to the right of appeal." It inadvertently failed to omit the word "final."

The petitioners further contend that even if the respondent board has jurisdiction it should nevertheless have dismissed the appeal of Narragansett Racing Association, Inc. on the ground that the association failed to exhaust its administrative remedies. In support of their position, they refer our attention to G. L. 1956, §41-3-5, which provides:

> "Such application for a class A license shall be filed on or before the fifteenth day of February in any year and the commission having considered the applications, shall on or before the first day of April in any year assign or award all dates for racing within the state of Rhode Island for the current year; provided, however, that the commission in its discretion, may receive applications at a later date and may change such assignment or award if in its judgment such change is found necessary, but prior to making such change it shall print a public notice in the newspapers and shall give the party aggrieved by such change an opportunity to be heard."

This provision appears in the general laws exactly as it was first enacted by the adoption of P. L. 1934, chap. 2086. At that time no appeal board existed, however, and such recourse as might be had by a licensee in such circumstances as exist here could have been had to no other authority. A careful reading of the section suggests, however, that its purpose was to authorize the original commission to make changes or alter assignments, which, when originally made, were not the subject of any controversy, but which, because of circumstances arising subsequent to the original award, rendered such award impractical, inadvisable, or ineffectual. It does not seem to have contemplated a dispute arising out of and simultaneously with an original assignment. Indeed, such authority was necessary in the event of unforeseen developments, if the finality provided for in P. L. 1934, chap. 2086, sec. 10, were not subject to reconsideration.

In any event the legislature, by creating the hearing board and making provision for an appeal to it from all decisions or orders made by the administrator, and fixing the time within which such appeals must be made, manifestly intended to substitute the appellate jurisdiction of the respondent board for the administrative remedy advanced by the petitioners in an original award.

The petition is denied and dismissed, the writ heretofore issued is quashed, and the records certified to this court are ordered returned to the respondent board with our decision endorsed thereon.

CONDON, C. J., dissenting. The only issue here is whether the obviously ambiguous language of the statute should be construed to give the hearing board jurisdiction on appeal to determine *de novo* an application for a license to hold racing on certain dates. If it is so construed then there are two licensing authorities over racing and the hearing board is the more important of the two because its action in denying or granting an application is final since such action can only be reviewed by this court on certiorari which raises only questions of law. The majority frankly concede that the effect of their opinion is to transfer the right of finality in the assignment or fixing of racing dates to the hearing board and that the legislature thus intended to make the board a super licensing authority.

With that conclusion I cannot agree. Of course, the legislature could so legislate, and if the statute under consideration were clear and unambiguous to that effect I would be constrained to apply it in accordance with its plain intent. But here the troublesome language is anything but unambiguous when it declares that the commission shall have the right to reject any application for a license for any reason it deems sufficient and that such action shall be final and then adds "subject to the right of appeal."

The latter words were apparently incorporated in G. L. 1956, §41-3-4, by the statute consolidation commission and

I am not satisfied from the commission's report or from the editorial notes appended to the section in explanation of the interpolation that it was expressly called to the attention of the legislature, as is required, when the revised consolidation of the general laws was approved.

In the circumstances grave doubt is cast upon the validity of such new matter in §41-3-4, and therefore it cannot be safely relied upon as the expression of the true intent of the legislature. Much more might be said against the conclusion to which the majority has come but no useful purpose would be served thereby, hence I rest upon the foregoing statement as one reason for this dissent.

PAOLINO, J. concurs in the dissenting opinion of Mr. Chief Justice Condon.

*Robert A. Gentile,* for petitioners.

*Sherwood and Clifford, Raymond E. Jordan, William A. Curran,* for intervenor Burrillville Racing Association.

*J. Joseph Nugent,* Attorney General, for respondents Maxwell W. Waldman et al.

*Aram A. Arabian,* for amicus curiae Narragansett Racing Association.