**Anthony Curtis FLOWERS, Appellee,**

v.

**Charles H. HAUGH, Warden, Iowa State Men's Reformatory, Appellant.**

No. 55914.

Supreme Court of Iowa.

May 23, 1973.

Richard C. Turner, Atty. Gen., Lorna Lawhead Williams, Asst. Atty. Gen., and Robert Story, County Atty., for appellant.

L. Vern Robinson, Iowa City, for appellee.

Heard before MOORE, C. J., and MASON, REES, UHLENHOPP, and McCORMICK, JJ.

McCORMICK, Justice.

The question in this case is whether an adult can be held in the men's reformatory under a juvenile court commitment order. Trial court held plaintiff was entitled to be released. We affirm.

Plaintiff Anthony Curtis Flowers was born January 7, 1953. On May 1, 1964, he was adjudicated a delinquent child and committed to the training school at Eldora under § 232.21, The Code, 1962. He remained there until June 9, 1970, when the director of child and family services for the department of social services requested approval of an order to transfer him to the men's reformatory at Anamosa pursuant to Code § 218.91 which authorizes such transfers " * * * for custodial care whenever it is determined that such action will be conducive to the welfare of the other inmates of the school." The transfer was approved and carried out.

Defendant Charles H. Haugh is warden of the men's reformatory and as such re-

ceived plaintiff for custodial care. On January 7, 1972, plaintiff turned 19. He was still in the reformatory on July 1, 1972, when legislation extending majority rights to 19 year olds in Iowa, Acts 1972 (64 G.A.) ch. 1027, became effective. Plaintiff brought this habeas corpus action two days later to challenge the legality of his detention. Trial court sustained the writ.

In seeking reversal, defendant contends: (1) he was not properly named as defendant; (2) the majority rights amendment did not affect plaintiff's commitment; (3) his new trial motion should have been sustained because the county attorney did not have time to prepare for trial.

I. *Naming the warden as defendant.* Defendant asserts that because the original commitment was the purported authority for confinement of plaintiff, the commissioner of social services should have been named as defendant in the habeas corpus action. This contention is not only moot but misconceives the nature and function of the writ.

 Its purpose is to cause one alleged to be unlawfully restrained to be expeditiously brought before the court so the legality of restraint can be judicially examined. The defendant named is not necessarily an adversary seeking to uphold the restraint; he is a person who can produce the plaintiff in court. Addis v. Applegate, 171 Iowa 150, 161–162, 154 N.W. 168, 173 (1915) ("[H]is responsibility ceases when he has done this."); Jones v. Biddle, 131 F.2d 853 (8 Cir. 1942); see also Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 29 L. Ed.2d 277 (1884); 39 Am.Jur.2d Habeas Corpus § 132 at 271; 39 C.J.S. Habeas Corpus § 77(b) at 622.

The warden had plaintiff's physical custody. He was a proper person against whom to address the writ.

 II. *The effect of the majority rights amendment.* Defendant contends the majority rights amendment is not "retroactive" and thus does not apply to plaintiff since he was committed prior to its enactment. However, the issue is not retroactivity but whether Code § 232.36, as amended by Acts 1972 (64 G.A.) ch. 1027, § 19, had the effect of terminating the authority for his restraint.

Before the amendment § 232.36 provided in relevant part: "All orders for supervision, custody, or commitment shall be enforced until the minor reaches the age of twenty-one years unless otherwise specified by the court." The amendment changed the age from "twenty-one" to "nineteen."

When plaintiff was committed § 232.30, The Code, 1962, fixed the duration of commitment. It provided: "Commitments shall be until the child attains the age of twenty-one years * * *." Then as now the length of commitment was fixed by statute rather than court order.

Similarly, when a child was committed to a state institution the juvenile court then lost jurisdiction as it does now when it commits a child to the commissioner of social services or his designee for placement. § 232.23, The Code, 1962; cf. § 232.35, The Code, 1973.

The effect of commitment under our juvenile code is not to incarcerate as under a criminal sentence but to change the child's status. This is reflected in the present definition of commitment as a transfer of legal custody. § 232.2(12), The Code. "Legal custody" is a "relationship created by court decree * * *." § 232.2(9), The Code. The director of child and family services becomes guardian of the person of the child. § 232.35, The Code. By definition that relationship lasts only until the minor reaches the age of majority. § 232.2(8), The Code.

Code § 232.36 represents a legislative determination as to when the status created by commitment ends. This was true before and after the 1972 amendment. The

only difference is that by the amendment the legislature fixed the limit at age 19 instead of 21 in accordance with its change in the age of majority. Commitment orders are not thereby modified retroactively. The status of plaintiff or any committed juvenile before July 1, 1972, is not affected. The statute simply bears on his status as of that date. State ex rel. Johnson v. Hershman, 55 Wis.2d 499, 200 N.W.2d 65 (1972).

There is no exception made in § 232.36 for persons committed prior to July 1, 1972. We cannot attribute an intent to the legislature to treat plaintiff differently after that date simply because the status terminated by the statute was created before then. See State v. Wiese, 201 N.W.2d 734, 737 (Iowa 1972) ("An ameliorative change should be extended to every case in which it properly can apply."). The legislature plainly included persons under juvenile court commitment among those reached by lowering the age of majority.

Trial court did not err in holding the amendment to § 232.36 terminated the commissioner's authority to restrain plaintiff.

III. *The motion for new trial.* Defendant contends trial court should have sustained his motion for new trial on the ground of "irregularity in the proceedings of the court" under rule 244(a), Rules of Civil Procedure. He alleges the county attorney was denied sufficient time to prepare for trial.

The record discloses the county attorney proceeded to trial July 8, 1972, without motion for continuance or objection. See rule 182(a), R.C.P. The matter was first raised in the motion for new trial. This was too late.

Trial court did not abuse its discretion in overruling defendant's motion for new trial.

Affirmed.