OPINION OF THE COURT
Elrich A. Eastman, J.
Respondent mother, Barbara S., moves this court pursuant to CPLR 5015, to vacate a dispositional order, dated October 7, 1977, permanently terminating her parental rights and committing the custody and guardianship of the infant Venessa S. to the Commissioner of Social Services and to the New York Foundling Hospital, upon the grounds of newly discovered evidence and in the interests of justice.
At issue is the court’s jurisdiction to entertain respondent mother’s motion.
The court notes that the Judges who presided at the fact-finding and dispositional hearings are currently not sitting in Family Court.
*314 Petitioners contend that the natural mother has no standing nor statutory right to move herein to vacate this dispositional order. No appeal has been taken from the dispositional order and relief is sought four years subsequent to the order terminating her parental rights. At the third foster care review proceedings under section 392 of the Social Services Law, the court held that this respondent mother had no standing. Consequently, the Law Guardian herein contends that this ruling constitutes the law of the case and that neither CPLR 5015 (subd [a], par 2) nor any other statute permits this respondent to bring this motion.
Section 165 of the Family Court Act permits the application of the CPLR where there is no prescribed method of procedure under the Family Court Act. Under the CPLR a case should not be dismissed if it can be sustained under any theory. In Lane v Mercury Record Corp. (21 AD2d 602) the court found that the CPLR has abandoned the “theory of the pleadings” rule. Thus, it is permissible to prove a theory different from that pleaded as long as the pleadings advise all parties of the transaction out of which the case arose. Absent prejudice, CPLR 3017 (subd [a]) allows the court to grant “any type of relief *** appropriate to the proof whether or not demanded”. CPLR 3025 (subd [c]) permits an amendment to conform the pleadings to the proof. Thus, by analogy, this court can entertain this motion upon any theory which may properly exist within its jurisdiction.
At the outset, therefore, this court notes that CPLR 5015 is not applicable since there is here presented no newly discovered evidence in existence at the time of the dispositional hearing that would substantially have effected its decision. Nor does the “interest of justice” have any bearing on this motion.
In effect this motion seeks to invoke the court’s continuing jurisdiction over these proceedings under its exercise of the State’s power of parens patriae. This court finds that the Family Court retains the necessary jurisdiction to entertain this motion as part of its continuing role as parens patriae. (See Finlay v Finlay, 240 NY 429, 433.)
*315 Parens patriae, which literally means the father or parent of the country is a concept which has developed out of the old English system whereby a court of equity, exercising the parental function of the Crown, could declare a child to be the ward of the Crown. This concept has been remolded in this country to signify a philosophy whereby the State has the responsibility to act as a “superparent” to persons deemed to be “non suis juris”. (See State of West Virginia v Pfizer & Co., 440 F2d 1079, 1098.) Overlapping the court’s role as parens patriae is the key principle of “best interests of the child”. It has been suggested that parens patriae “contemplates not only a right, but also a duty, on the part of the State, to act for the protection of the individual and then only in his or her best interests.” (See 13 Gonzaga L Rev 625, 638.) On the basis of its parens patriae power, the Family Court in a number of contexts has decided guardianship and custody questions despite the absence of any statutory grant of jurisdiction. (See Matter of Catherine S., 74 Misc 2d 154, 159; see, also, Matter of Ellick, 69 Misc 2d 175.)
In Finlay v Finlay (supra, pp 433-434) the court stated: “The chancellor in exercising his jurisdiction * * * does not proceed upon the theory that the petitioner, whether father or mother, has a cause of action against the other or indeed against any one. He acts as parens patriae to do what is best for the interest of the child *** Equity does not concern itself with *** disputes in their relation to disputants. Its concern is for the child.” The Family Court, as it now exists, in New York was created to be a “special agency for the care and protection of the young and the preservation of the family” (1962 Report of Joint Legis Comm on Ct Re-organization, No. 2, Family Ct Act, p 2).
Pursuant to its parens patriae function, therefore, the court has a duty to insure that the best interests of children who have been placed in its care are safeguarded. This duty continues until the State, through its agencies, is replaced by a permanent parent by means of adoption.
Moreover, the court’s continuing jurisdiction over children placed in foster care after termination of parental rights is reaffirmed in section 392 of the Social Services *316 Law, which grants the court exclusive jurisdiction to periodically review the foster care of the child.
Furthermore, implicit in the statutory authority granted to this court is its continuing jurisdiction after placement or commitment as set forth at subdivision (b) of section 632 of the Family Court Act: “If a motion has been made in the course of a proceeding under this part to reconsider an underlying order of placement or commitment, the court retains jurisdiction to dispose of that motion regardless of whether it dismisses the petition.” (Emphasis added.)
Consistent with this authority is the holding of the Appellate Division in the case of Matter of Kurtis v Ballou (33 AD2d 1034) which states: “It is settled that this jurisdiction cannot be limited or diminished by statute”.
Thus this court has the jurisdiction to consider this motion.
In providing the statutory scheme for termination of parental rights and the commitment of the guardianship and custody of destitute and dependent children, the Legislature established the premise for such State intervention, thusly (Social Services Law, § 384-b, subd 1, par [a], els [i], [ii]; par [b]):
“[i] it is desirable for children to grow up with a normal family life in a permanent home and that such circumstance offers the best opportunity for children to develop and thrive;
“[ii] it is generally desirable for the child to remain with or be returned to the natural parent because the child’s need for a normal family life will usually best be met in the natural home, and that parents are entitled to bring up their own children unless the best interests of the child would be thereby endangered; ***
“(b) The legislature further finds that many children who have been placed in foster care experience unnecessarily protracted stays in such care without being adopted or returned to their parents or other custodians. Such unnecessary stays may deprive these children of positive, nurturing family relationships and have deleterious effects on their development into responsible, productive citizens. The legislature further finds that provision of a timely *317 procedure for the termination, in appropriate cases, of the rights of the natural parents could reduce such unnecessary stays.”
Indeed, it was not the Legislature’s intention to undermine the rights of natural parents by instituting a procedure whereby these rights are easily terminated. Clearly, the intent was to afford protection to both natural parents and their children. Equally evident is that the primary purpose of the statute was to expedite proceedings to reduce the “unnecessarily protracted stays” in foster care. This case, indeed, is a classic illustration of circumstance the Legislature specifically sought to eradicate.
Venessa S. was born on April 19, 1972. At her birth, respondent mother was 15 years of age and then residing in foster care. No father was acknowledged by any of the parties in the earlier stages of Venessa’s life and no father’s name was recorded on her birth certificate. On May 9,1972, respondent mother voluntarily placed her with the Commissioner of Social Services. On March 3, 1973 she was placed in the care of the New York Foundling Hospital and shortly thereafter she was placed in her first foster home. On August 26, 1975 the Family Court directed the New York Foundling Hospital to institute proceedings to free Venessa for adoption. After the initial foster parents decided not to adopt, the child was placed in a second foster home. Upon a finding of permanent neglect on March 3, 1977, Venessa was freed for adoption and parental rights terminated on October 7, 1977 and her guardianship and custody was committed to the Commissioner of Social Services and the New York Foundling Hospital. Thereafter, she was placed in her third foster home on May 7,1979.
During this time no steps were taken to terminate the biological father’s rights. Nevertheless in 1980 the biological father, Harrison White, was located by the agency, preparatory to termination proceeding against him, and he became a resource for a kinship discharge. On February 20, 1981 Venessa was released on trial discharge to his home. On April 24, 1981 the child was removed from his home after a complaint by her that she was raped by Mr. White. At present he is incarcerated awaiting trial in criminal court on a charge of rape. The child was returned *318 to the foster home from which the trial discharge occurred and is currently living there. Meanwhile, the respondent mother claims that during the child’s stay with the putative father she re-established a relationship with Venessa and with her siblings, Suzette, born July 1, 1974, and Iisha, born November 13, 1979, both of whom reside with the respondent mother.
From this brief summary of the facts herein, it is evident that the statutory purpose for terminating parental rights has not been effectuated in nine years of placement with the agency, four of which are after parental rights were terminated. Evident here is a change in the agency plan for adoption by the foster parents to discharge to the biological father. Under such circumstances, this child found herself living with her natural father’s family without an order of filiation albeit her natural mother’s parental rights were terminated.
Underlying this respondent mother’s voluntary placement of this child with the Commissioner of Social Services were her expectations that the child would receive a higher level of care than she could provide. This expectation was reaffirmed by the dispositional order terminating her parental rights. Indeed, the statutory scheme under section 384-b of the Social Services Law is not intended as punishment to an unfit parent but rather as protection for a destitute and dependent child. As evidence of this, section 631 of the Family Court Act distinctly states in part: “An order of disposition shall be made, pursuant to this section, solely on the basis of the best interests of the child, and there shall be no presumption that such interests will be promoted by any particular disposition.” (Emphasis added.)
Thus, a review of these facts gives rise to the court’s authority to quetion the judgment of the agency in releasing this child on trial discharge to a putative father without an order of filiation, who has absented himself from the child’s life for a period of eight years. It is unnecessary for this court to engage in a lengthy discussion of the detrimental impact of the lack of consistent care upon a child of tender years together with the experience of an alleged paternal rape.
*319 This court finds that the ruling of no standing as to the respondent mother in the foster care review proceedings under section 392 of the Social Services Law is not binding in this proceeding. There, the agency stood in loco parentis and this respondent mother, after termination of her parental rights, had no further custodial interest. Here, she is a party respondent to the proceeding.
While the court is cognizant of the sanctity of a judgment or order of this court and the inherent dangers of widespread upsetting of court orders, it is, nevertheless, within the power of the court to sedulously scrutinize each application before exercising its discretion.
Accordingly, this court, for the reasons set forth above, hereby vacates and sets aside the dispositional order of October 7, 1977 and directs that a new dispositional hearing be held herein to determine the best interests of this child, on December 7, 1981 before this court.
Pending a hearing and determination of said dispositional hearing custody of this child is to remain with the Commissioner of Social Services and the New York Foundling Hospital.