OPINION OF THE COURT
Paula J. Hepner, J.
On February 23, 1998 the Law Guardian filed an order to *5 show cause seeking to have the court vacate its prior order terminating the parental rights of the respondent father and to conduct a new dispositional hearing for the purpose of determining whether it is in the best interests of the child to dismiss the petition so that Anthony may be returned to his father. The legal foundations relied upon by the Law Guardian in making this motion are CPLR 5015 and sections 631, 632 and 1055-a of the Family Court Act. From the court’s research, it would appear that the issues raised and the relief sought in this motion present matters of first impression.
Answering papers were received from counsel for the Administration for Children’s Services and Catholic Guardian Society. Each addresses the practical necessity of granting the Law Guardian’s motion, either because “Anthony is presently 15 years of age, is unwilling and unlikely to be adopted”,[1] or because “caseworkers have not been able to persuade Anthony to return to the agency group home and it is highly unlikely that this 15 year old child will ever do so voluntarily.”[2] Neither addresses the standing of the Law Guardian to make this motion in the first instance or secondly, the statutory authority for the court to grant the relief requested. No papers were submitted on behalf of the respondent father.
BACKGROUND OF THIS MATTER
Anthony came into foster care pursuant to a neglect finding on July 13, 1987 based on the misuse of drugs by his mother and father and their failure to provide adequate food, shelter, clothing, medical care and proper supervision for him and his four siblings. Pursuant to the dispositional order of October 9, 1987, the children were placed with the Commissioner of the Office for Children and Family Services (Commissioner) for 18 months. Extensions of placement were held in each of the ensuing years through 1996. In 1991, a trial discharge was contemplated and overnight visitation was arranged for Anthony and Liberty but the respondent father was incarcerated in 1992 and Anthony and his sister remained in care. Orders directing the Commissioner to file termination petitions on behalf of Anthony were first made in 1993 and then again in 1994. Petitions to terminate the parental rights of the respondent father were filed on September 21, 1994. The court made a finding on June 19,1995 that both parents permanently *6 neglected the child by failing to visit with Anthony and failing to plan for his return. The same day the court entered a dispositional order terminating both parents’ rights to the child and committed Anthony’s care and custody to the Commissioner and the agency for the purposes of adoption. Anthony was then 13 years old.
Evidence submitted at the foster care review proceedings held in the years 1996 and 1997 disclosed that an adoption petition for Anthony was filed in Surrogate’s Court, New York County. At the foster care review proceeding on September 19, 1997, this court issued a warrant for Anthony who was absent without leave from his foster home. On October 9, 1997 the respondent father filed a petition for custody of Anthony. The respondent father appeared in court with Anthony on October 27, 1997 and counsel was assigned to represent the respondent father. On February 2, 1998 the custody petition was dismissed since the respondent father had not appeared since October 1997. On February 3, 1998 the Law Guardian filed the order to show cause which is presently before the Court.
LEGAL AJSTALYSIS
The Law Guardian proposes several legal theories to obtain the relief requested and proclaims that if the court finds none of them persuasive and “says to a fifteen year old boy, who has a deep bond with a male figure that is his father, tough luck, you are a legal orphan and you have no choice but to live in a group home, then the law becomes an ass.”[3]
 To begin with, the Law Guardian points to CPLR 5015 (a) which provides that “[t]he court which rendered a judgment or order may relieve a party from it upon such terms as may be just”. The child is not a party to the termination proceeding and this presents the initial problem for the Law Guardian’s effort to invoke this rule to obtain relief from the court’s dispositional order in the termination proceeding.[4] Assuming, however, the child was considered a party to the termination, *7 the Law Guardian asserts subdivision (a) (1) as a basis to set aside the respondent father’s default. In his affirmation, the Law Guardian alleges “upon information and belief, the father insists he was unaware of the final court date”[5] in the termination case and suggests the respondent father’s default was excusable. There is no affidavit from the respondent father annexed to the Law Guardian’s moving papers and, indeed, the Law Guardian later concedes that he “is not privy to an actual reason for Anthony Sr.’s default.”[6] There are two obstacles in attempting to set aside the dispositional order on the ground of excusable default. First, the statute requires a party make the motion within one year after entry of the judgment or order from which relief is being sought. Since the dispositional order was entered on June 19, 1995, the motion is time barred. The second component of excusable default is the supplemental requirement to show a meritorious defense to the petition when filed. The Law Guardian’s papers do not contain anything which would fulfill this requirement and the defense surely cannot be based on the subsequent failure of the adoptive resource to complete the adoption or Anthony’s current refusal to be adopted.
The Law Guardian contends that the foster parent’s opposition to adopting Anthony and Anthony’s pattern of running away to the respondent father on numerous occasions constitute newly discovered evidence which should be a basis to grant relief from the dispositional order under CPLR 5015 (a) (2). “ [N] ewly-discovered evidence”, under CPLR 5015 (a) (2), is a ground to set aside a prior order only when the evidence “if introduced at the trial, would probably have produced a different result and which could not have been discovered in time to move for a new trial under section 4404”.[7] This rule does not permit evidence arising from circumstances that occurred three years after the trial to become the basis for setting aside a decision issued earlier. Even so, under section 384-b (3) (i) of the Social Services Law, “proof of the likelihood that the child will be placed for adoption shall not be required in determining whether the best interests of the child would be promoted by *8 the commitment of the guardianship and custody of the child to an authorized agency.” Because the law does not require that there be a viable adoptive resource at the time of the termination, the adoptive parent’s withdrawal three years later does not become a reason to subsequently vacate the order terminating the parental rights of the parent.
Since there is no opposition to the Law Guardian’s motion in the answering papers from the Commissioner or the agency, the Law Guardian points to CPLR 5015 (b) as the next statutory base for relief from the court’s dispositional order of June 19, 1995. CPLR 5015 (b) provides that “[t]he clerk of the court may vacate a default judgment entered pursuant to [CPLR] 3215 upon the filing with him of a stipulation of consent to such vacatur by the parties personally or by their attorneys.” This argument overlooks the fact that this default judgment was not entered pursuant to CPLR 3215.[8] That the Law Guardian elected to file this motion instead of filing a stipulation with the clerk is an acknowledgment that CPLR 5015 (b) is not applicable to this matter.
Similarly unavailing is the Law Guardian’s reliance on one sentence from CPLR 3017 (a) to achieve vacatur of the June 19, 1995 dispositional order. CPLR 3017 (a) states that “[e]xcept as provided in [CPLR] 3215, the court may grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded, imposing such terms as may be just.” CPLR article 30 concerns remedies and pleadings in general and the problem with this argument is that CPLR 3017 pertains specifically to demands for relief set forth in complaints, countercomplaints and cross claims. It does not apply to motion practice.
Calling the court’s attention to Family Court Act § 631, which requires courts to make dispositional orders in termination cases “solely on the basis of the best interests of the child”, and the language of Family Court Act § 632 (b), the Law Guardian argues that the court has jurisdiction to vacate the 1995 dispositional order because that statute provides “[i]f a motion * * * has been made in the course of a proceeding under this *9 part to reconsider an underlying order of placement or commitment * * * the court retains jurisdiction to dispose of that motion * * * regardless of whether it dismisses the petition.” (Family Ct Act § 632 [b].) Family Court Act § 632 (b) clearly refers to any extension petition for the underlying placement order, made pursuant to a neglect finding or upon approval of a voluntary placement instrument, which might require review during the time a termination proceeding is being litigated. It also refers to a commitment order entered in a termination proceeding providing the motion is made in the course of the proceeding. Once a dispositional hearing concludes and an order is entered, the proceeding is finished. This section does not authorize the filing of motions three years after the proceeding was concluded.
Citing Matter of Female S. (111 Misc 2d 313 [Fam Ct, NY County 1981]), the Law Guardian maintains that Family Court Act § 632 (b) has been used as authority for vacating disposition orders in termination cases. In Female S., the respondent mother moved to vacate the dispositional order on the grounds of “newly discovered evidence and in the interests of justice.” (Supra.) Four years passed since the mother’s parental rights were terminated and she did not take an appeal from that decision. Finding that both Family Court Act § 632 (b) and the State’s power of parens patriae gave the court “a duty to insure that the best interests of children who have been placed in its care are safeguarded”, Judge Eastman found jurisdiction existed to vacate the termination order and direct a new hearing into the best interests of the child. (Matter of Female S., at 315.) Quite apart from the factual distinctions between Female S. and the instant matter, this court respectfully disagrees with that court’s interpretation of Family Court Act § 632 (b).
Finally, the Law Guardian seeks to reopen the dispositional phase of the termination by relying on Family Court Act § 1055-a (10) which provides that “[t]he court shall possess continuing jurisdiction * * * and * * * shall rehear the matter whenever it deems necessary or desirable, or upon petition by any party entitled to notice in proceedings under this section.” Under Family Court Act § 1055-a (4), the Law Guardian is not a party entitled to notice of the proceeding. Subdivision (12) of that statute provides that the Law Guardian shall be reappointed once a petition is filed. Therefore, the Law Guardian is not empowered, by this section of the statute, to bring the instant motion.
Moreover, the purpose of Family Court Act § 1055-a is to establish a procedure to periodically review the status of children *10 freed for adoption. The legislative intent behind this enactment was “to expedite the adoption of’ children “freed for adoption for at least six months but [who have] not been placed in a prospective adoptive home.”[9] In furtherance of this goal, Family Court Act § 1055-a (6) requires the court review “the appropriateness of the child’s service plan” (Family Ct Act § 1055-a [6] [a]), review what “services have been provided to ensure and expedite the adoption of [the] child” (Family Ct Act § 1055-a [6] [b]), and review “any further efforts which have been or will be made to promote the best interests of the child.” (Family Ct Act § 1055-a [6] [d].) At the conclusion of the court’s review, Family Court Act § 1055-a (7) requires the court make specific orders to assure that the necessary adoption services are being provided to facilitate the permanency goal, that adoptive homes are being found, that freed children are being placed for adoption, and that adoption proceedings are being initiated. None of the dispositional orders set forth in Family Court Act § 1055-a (7) include the authority to reconsider the propriety of the original order terminating parental rights and to do so would be inconsistent with the legislative intent in enacting the statute.
Notwithstanding the above analysis, the papers submitted on this motion reveal extensive problems were this court to entertain the Law Guardian’s application. First, the preadoptive home in which Anthony has resided for many years is no longer available because the child is “experiencing behavioral problems at home and school.”[10] The child repeatedly ran away from that home to his father and his paternal grandmother. The paternal grandmother does not want Anthony in her home because “he is disrespectful and disobedient.”[11] While in his father’s care, Anthony was not returned to court to vacate the warrant issued on the termination docket for one month. While in his father’s care, Anthony was arrested for a juvenile delinquency matter and due to his nonappearance, a warrant was issued for him. The respondent father told the caseworker he would “do his best to persuade Anthony to return to the group home and surrender himself on the warrant.”[12] Two months passed before Anthony was returned on the delinquency warrant. The respondent father has not been present in this court *11 since October 27, 1997. His wife appeared on February 2, 1998 to say that he was in Chicago but could not explain whether or when he might return. From these facts, it is obvious to the court that the child is beyond the lawful control of the respondent father and it is questionable with whom the child is actually residing and how he is spending his time. The facts would not yield a conclusion that Anthony’s best interests would be served by setting aside the dispositional order of June 19, 1995.
As a final effort, the Law Guardian asks this court to grant his motion and “permit Anthony to join his family” arguing that “the law is also about equity and in the area of child protection, equity concerns the child.”[13] The Family Court is a court of limited jurisdiction and may exercise only those powers specifically granted to it by the State Constitution or by statute. (Matter of Walker v Walker, 86 NY2d 624, 629 [1995]; Sparacio v Sparacio, 248 AD2d 705 [2d Dept 1998]; Matter of Mancini v Mormile, 234 AD2d 461 [2d Dept 1996]; Matter of Dale P., 189 AD2d 325, 333 [2d Dept 1993], lv granted 82 NY2d 661 [1993], order affd as mod 84 NY2d 72 [1994].) The Family Court does not possess equity jurisdiction (Matter of Marvin A. v Denise A., 161 Misc 2d 745, 747 [Fam Ct, Queens County 1994]), nor does it have statutory authority to vacate the prior dispositional order in the interests of justice (Matter of Troy M., 156 Misc 2d 1000, 1004 [Fam Ct, NY County 1992]).
CONCLUSION
For all of the foregoing reasons, the court holds that the Law Guardian does not have standing to bring the instant motion and further holds that there is no statutory authority for the court to vacate its dispositional order of June 19, 1995. Accordingly the Law Guardian’s motion is denied.

. Affirmation of Hilario Chacker, Esq., dated Apr. 1, 1998 [J 5.

. Affirmation of Thomas M. McGuire, Esq., dated Mar. 31, 1998 4.

. Affirmation of Brian Zimmerman, Esq., dated Feb. 2, 1998 H 9.

. Proceedings to terminate parental rights are special proceedings under CPLR article 4. Pursuant to CPLR 401, the party commencing a special proceeding shall be “styled the petitioner and any adverse party the respondent.” Under section 384-b (3) (b) of the Social Services Law, the Law Guardian may not petition the court for a termination of parental rights unless the child-care agency fails to act and then may do so only when authorized by the court. Service of the summons, pursuant to section 384-b (3) (e) of the Social Services Law and section 616 of the Family Court Act, must be made upon the child’s parent. There is no provision for notice to the Law Guardian *7 and whether or not a Law Guardian is appointed for the child is discretionary with the court since Social Services Law § 384-b (3) (c) provides that “the court shall, when appointing a law guardian for the child, appoint a law guardian who has previously represented the child.” (Emphasis added.)

. Affirmation of Brian Zimmerman, Esq., dated Feb. 2, 1998 5.

. Affirmation of Brian Zimmerman, Esq., dated Feb. 2, 1998 6.

. CPLR 4405 provides that the motion for a new trial under CPLR 4404 must be made within 15 days after the decision is rendered.

. CPLR 3215 is a procedural device to obtain an accelerated judgment when a party fails “to appear * * * or when the court orders a dismissal for any other neglect to proceed”. (CPLR 3215 [a].) No application under subdivision (a) was made by the petitioner for the entry of a default judgment and when the respondent failed to appear, the court conducted a full hearing before making its findings of fact and conclusions of law. Judgment was not entered simply on the pleadings. A further reason why this judgment was not entered under CPLR 3215 is that this rule applies to actions, not special proceedings.

. Mem in Support of NY Senate Bill S 8235-B, sponsored by Senator Mary Goodhue, dated Aug. 26, 1988, Bill Jacket, L 1988, ch 638.

. Affidavit of Crispin St. Louis, dated Mar. 13, 1998 6.

. Affidavit of Crispin St. Louis, dated Mar. 13, 1998 10.

. Affidavit of Crispin St. Louis, dated Mar. 13, 1998 12.

. Affirmation of Brian Zimmerman, Esq., dated Feb. 2, 1998 [[ 9.