OPINION OF THE COURT
Lee H. Elkins, J.
The Law Guardian, on behalf of the subject child Frederick S., moves to vacate a judgment, entered March 20, 1997, terminating the natural mother’s parental rights. The sole basis for the Law Guardian’s motion is that the subject child, now 14 years of age, does not wish to be adopted by his maternal aunt with whom he has lived since the age of seven, in light of his affection for his mother. Initially, the Law Guardian cited no statutory basis for her motion. Miracle Makers, which was the petitioner on the original termination petition, argues that the only procedural means to accomplish the Law Guardian’s purpose is CPLR 5015. The Law Guardian replies that the court has inherent authority to vacate the judgment.
Miracle Makers argues further that none of the statutory bases established by CPLR 5015 applies in this case.[1] Miracle Makers contends that the only conceivable statutory ground for setting aside the judgment would be the existence of newly discovered evidence, which had it been introduced at trial, would probably have produced a different result. (CPLR 5015 [a] [2].) Miracle Makers further contends that the child’s change of mind regarding adoption is not evidence which would probably have produced a different result had it been introduced at the dispositional hearing on the petition to terminate the mother’s parental rights. The Law Guardian contends that the child’s change of mind is evidence of the sort which requires a new dispositional hearing, if not a dismissal of the termination petition.
*154 The court will address the procedural and substantive issues separately.
Procedurally, the court concludes that Miracle Makers’ contention that the proceeding is governed by CPLR 5015 is correct. Although the Law Guardian contends that this court has inherent authority, under the doctrine of parens patriae, to set aside the previous judgment in the best interest of the subject child (see, e.g., Matter of Female S., 111 Misc 2d 313 [Fam Ct, NY County 1981]), this court’s powers are strictly defined and delimited by statute. (See, e.g., Matter of Anthony S., 178 Misc 2d 1 [Fam Ct, Kings County].) Nothing in the Family Court Act or the Social Services Law authorizes the court to vacate a judgment committing custody and guardianship to a petitioning agency, once the judgment is entered. Unlike article 10 of the Family Court Act, which contains specific statutory authority to set aside, modify or vacate any order issued in the course of a proceeding under that article (Family Ct Act § 1061), no such authority is conferred by any provision of Family Court Act article 6, which governs proceedings to terminate parental rights for permanent neglect of the subject child.
The dispositional alternatives available to the court upon finding permanent neglect are limited to dismissing the petition (Family Ct Act § 632); suspending judgment (Family Ct Act § 633); or committing guardianship and custody of the child (Family Ct Act § 634). Section 632 (b) of the Family Court Act, which permits the court “in the course of a proceeding under this part to reconsider an underlying order of placement of commitment” does not confer authority to vacate a judgment previously entered. That section merely preserves the court’s jurisdiction, even though dismissing a petition to commit the guardianship and custody of a child to an agency, to reconsider such underlying orders as placed the child into foster care. (See, e.g., Matter of Anthony S., 178 Misc 2d 1 [Fam Ct, Kings County], supra.) The purpose of that section appears to be to permit the court to consider a return of the child to the parent or other temporary custody alternative after dismissing a petition to terminate parental rights. (See, e.g., Matter of Michael B., 80 NY2d 299, 308 [1992].) Nothing in the section refers to motions made after the termination proceedings have concluded with a judgment granting the petition. (See, e.g., Matter of Anthony S., supra.)
Moreover, neither section 1055-a of the Family Court Act nor section 392 of the Social Services Law evinces a legislative *155 intent to confer upon this court the authority for which the Law Guardian contends. As recently noted in Matter of Anthony S. (supra), the purpose of those sections is to establish procedures for the periodic review of the status of children in foster care, including those who have been freed for adoption and placed in a preadoptive home, where no petition to adopt has been filed within 12 months of the order. In such circumstances, the court possesses continuing jurisdiction to review the appropriateness of the service plan and the efforts made to expedite the adoption or otherwise to promote the best interests of the child. (Family Ct Act § 1055-a [6]; Social Services Law § 392 [9].) However, none of the dispositional orders authorized by the Legislature upon such review (Family Ct Act § 1055-a [7]; Social Services Law § 392 [6] [d], [e]) includes the authority to reconsider the original order terminating parental rights. (See, e.g., Matter of Anthony S.) Instead, the Legislature in section 392 of the Social Services Law declared that where a child over the age of 14 has been freed for adoption but is not willing to consent to adoption, the reviewing court must “examine the report of the law guardian of such child concerning the facts and circumstances with regard to the child’s decision to withhold consent and the reasons therefore”. (Social Services Law § 392 [5-a] [e].) Although the Legislature was aware of the possibility of nonconsent by a 14 year old, the statute does not require that the order of termination be vacated by virtue of the child’s nonconsent. The legislative alternative where return to a parent is not in the child’s best interest, is to plan with the child for a transition to independent living.
Where no method of procedure is prescribed by the Family Court Act, the Civil Practice Law and Rules applies to Family Court proceedings, “to the extent that they are appropriate to the proceeding involved.” (Family Ct Act § 165 [a].) CPLR 5015 was intended to codify the court’s “ ‘inherent discretionary power’ ” to vacate its judgments, by setting forth the usual grounds for exercising such discretion. (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5015:6, at 468.) As a general rule, motions to vacate judgments are disfavored because such motions tend to disrupt the stability of the legal relationships established by the judgment. (See, e.g., Lascaris v Hinman, 120 Misc 2d 954, 955 [Fam Ct, Onondaga County 1983].) This policy is particularly important where the vacated judgment would disrupt permanency in the life of a child. (See, e.g., Matter of Tiffany H., 171 Misc 2d 786, 791 [Fam Ct, Kings County 1996].) Consequently, the discre *156 tion to set aside such judgments should be exercised sparingly and only for the most compelling reasons.
A judgment entered pursuant to article 6 of the Family Court Act is intended to achieve the legislative purpose stated in Social Services Law § 384-b (1) (a) (iv). When “the natural parent cannot or will not provide a normal family home for the child and when continued foster care is not an appropriate plan for the child, then a permanent alternative home should be sought”. The purpose of the judgment entered in this case was to free the child for adoption by the foster mother, his maternal aunt with whom he has lived half of his life.
Applying CPLR 5015, the court finds that the evidence proffered by the Law Guardian is appropriate to the court’s determination of a dispositional order in a proceeding to terminate parental rights on grounds of permanent neglect. The attitude of the child who is the subject of the termination petition, toward the prospect of adoption may constitute, in an appropriate case, “newly-discovered evidence which, if introduced at the trial, would probably have produced a different result”. (CPLR 5015 [a] [2].)[2] Under section 631 of the Family Court Act, an order of disposition in such proceedings is to be made “solely on the basis of the best interests of the child, and there shall be no presumption that such interests will be promoted by any particular disposition.” Under section 384-b (3) (k) of the Social Services Law, where the child who is the subject of the petition is over 14 years of age, “the court may, in its discretion, consider the wishes of the child in determining whether the best interests of the child would be promoted by the commitment of guardianship and custody of the child.” Under section 111 of the Domestic Relations Law, a child over the age of 14 must consent to be adopted. Consequently, knowledge that the child will withhold consent to adoption is a relevant factor to be considered in determining whether an order freeing the child for adoption is in the child’s best interests. {See, e.g., Matter of Brian G., 122 Misc 2d 659 [Fam Ct, NY County 1984].) On the other hand, proof of the likelihood that the child will be placed for adoption “shall not be required in determining whether the best interests of the child would be promoted by the commitment of the guardianship and custody of the child to an authorized agency.” (Social Services Law § 384-b [3] [i].) *157 In other words, an adoptive placement is not a precondition to an order terminating parental rights. (See, e.g., Matter of Troy M., 156 Misc 2d 1000 [Fam Ct, NY County 1992].)
Consequently, while the child’s prospective consent to be adopted is a significant factor in determining which of the dispositional alternatives available to the court under section 631 of the Family Court Act will serve the best interests of the child, the child’s consent is not the sole or even the most significant factor. The same principle applies in determining the best interests of a child who is the subject of competing claims for custody by the child’s parents. As noted by the Court of Appeals in that context, “it is important for the court to consider the desires of each child. But again, this is but one factor to be considered; as with the other factors, the child’s desires should not be considered determinative. [Citations omitted.] While not determinative, the child’s expressed preference is some indication of what is in the child’s best interests.” (Eschbach v Eschbach, 56 NY2d 167, 173 [1982]; see also, Darema-Rogers v Rogers, 199 AD2d 456, 457 [2d Dept 1993].)
Any application under CPLR 5015 (a) (2) to set aside a judgment freeing a child for adoption on grounds of permanent neglect necessarily must address the best interests of the child. The child’s best interests must be ascertained primarily by examining the ability and motivation of the parent to overcome the circumstances which led to the finding of permanent neglect. At minimum, a motion to set aside a judgment of termination would need to demonstrate the parent’s ability to provide a stable, nurturing and safe environment for the subject child. Finally, the newly discovered evidence of the parent’s circumstances must relate to the time period prior to the entry of the judgment committing custody and guardianship of the child. (See, e.g., Matter of Anthony S., 178 Misc 2d 1 [Fam Ct, Kangs County], supra; cf., e.g., Matter of Tiffany H., 171 Misc 2d 786 [Fam Ct, Kings County 1996], supra [child’s desire to be in custody of natural mother following termination of parental rights and adoption did not confer standing upon the mother to bring a custody petition].) In an appropriate case, even after a finding of permanent neglect, such evidence might support the entry of a suspended judgment or even of dismissal, instead of a judgment terminating the parent’s rights to guardianship and custody of the child. (See, e.g., Matter of Society for Seamen’s Children [Juda J.] v Jennifer J., 208 AD2d 849 [2d Dept 1994] [new dispositional hearing appropriate based upon mother’s actions following finding of permanent *158 neglect and before judgment]; cf., e.g., Matter of Tiffany A., 242 AD2d 709 [2d Dept 1997].)
These principles would apply even were the court to accept the Law Guardian’s invitation to exercise “inherent authority”, in the best interests of the child, to vacate its judgment. Unless the parent has overcome her inability to maintain a stable home and to attend regularly to the child’s daily needs by planning for the child’s support, education and housing, under any standard of review it would not be in the child’s best interests to restore the parent’s rights to custody and guardianship of the child. For example, in Matter of Patrick L. McC. (179 AD2d 220, 223 [1st Dept 1992], supra), where the appellate court set aside a dispositional order terminating the mother’s parental rights on default, the Court noted “new evidence of [the mother’s] improved circumstances” making it appropriate for the agency to renew working with the mother toward the ultimate goal of the return of the children to their natural mother. Where the choice is between an indefinite stay in foster care without prospect of a permanent placement and return to a rehabilitated parent, the circumstances may not warrant a judgment terminating parental rights. (See, e.g., Matter of Wesley L., 72 AD2d 137 [1st Dept 1980].) In this case there is no evidence of a significant change in the parent’s ability to provide for the child. Under the circumstances, the court finds as a matter of law that the child’s best interests are not served by preserving the parent-child relationship, even though the child is not prepared to consent to adoption.
The motion to vacate the judgment is denied.

. The natural mother appeared and testified at the fact-finding hearing. Although she did not appear at the dispositional hearing, the Law Guardian does not contend that she had a legal excuse for failing to appear. (Cf., e.g., Matter of Patrick L. McC., 179 AD2d 220 [1st Dept 1992].) Moreover, this is not the mother’s motion.

. While evidence was presented at the original dispositional hearing that Frederick, then 13, would consent to adoption, when he became 14 he apparently decided to withhold consent. The court accepts for purposes of this decision that the child’s change of mind is “newly discovered” evidence.