OPINION OF THE COURT
Paula J. Hepner, J.
Before the court is a petition filed by Tiffany A. for custody of her 16-year-old daughter, Tiffany H. In paragraph two of her pleading, Tiffany A. asserts that she is "the mother of the child.” The respondent is identified in paragraph four of the pleading as "the adoptive mother of the child.” The respondent appeared in court on the day the petition was filed and consented to the relief the petitioner is seeking. The Legal Aid Society, who previously represented this child throughout the neglect and termination cases, was reassigned to the case, and after interviewing Tiffany H., also consented to the relief requested.
Questioning whether the petitioner has standing to bring this proceeding for custody and whether the filing of this proceeding contravenes this State’s laws and public policy with regard to adoption, this court served a notice of pendency with a copy of the custody petition upon the Commissioner of the New York City Department of Social Services, the Commissioner of the New York State Department of Social Services, *788 and the authorized agency through whom the child was adopted.
In response, the court received a letter from the State Department of Social Services indicating that "the Department would have considered intervention if the petitioner had asserted a right to standing in a custody proceeding as the birth parent of an adopted child. Such a situation would raise serious issues relating to the finality of the adoption and its impact on Section 117 of the Domestic Relations Law. Also, the Department would have a concern over the potential chilling effect such a proceeding could have over subsequent adoptions. However, the facts of this case do not present a situation which raises such a concern since the petitioner is not asserting rights to the child distinct from a third party * * * The Department has no objection to the Court entertaining this petition for custody upon the understanding that the petitioner is making this request as a third party and the respondent consents to the petition.”[1]
The Commissioner of the New York City Department of Social Services submitted a memorandum of law in which she declined to intervene in this matter claiming that "the Commissioner has absolutely no legal authority over any family and no basis to intervene in the life of a family unless a child protective issue is raised or that family voluntarily seeks services or assistance from the Commissioner.”
St. Joseph’s Services for Children and Families did not submit a formal response to the notice of pendency. Their attorney appeared in court and said that Tiffany H. was living with the petitioner and "doing well”[2] and reported that the adoption subsidy is still being paid to the adoptive mother. The respondent acknowledged she was receiving the subsidy but said she was relinquishing the money to the petitioner in order to assist her in caring for the child. The representative from the New York State Department of Social Services advised the court that the State would not object "as long as [the adoptive *789 mother] remains legally responsible for the support of the child or is providing support to the child.”[3]
BACKGROUND OF THIS MATTER
On June 14, 1986 Tiffany A. gave birth to Gregory A., born with a positive toxicology for cocaine. In August 1986, 20-year-old Tiffany A. left Gregory and her two other children[4] with the maternal great-grandmother and disappeared. A report of suspected child abuse or maltreatment was made to the State Central Registry and, after investigation, neglect petitions were filed against Tiffany A. The children were removed and remanded to the Commissioner of Social Services on September 5, 1986. On December 2, 1986, findings of neglect were entered in New York County Family Court against Tiffany A. on the ground of maternal drug abuse and on January 22, 1987 that court entered a dispositional order placing the three children in foster care for 18 months and requiring Tiffany A. to enroll in a drug treatment program, remain drug free, complete a parenting skills class, and visit the children regularly. In January 1988, the Commissioner of Social Services filed another neglect petition against Tiffany A. because she gave birth to a second baby with a positive toxicology for cocaine. On March 10, 1988, a second finding of neglect was entered in the Family Court against Tiffany A. based on her continued misuse of drugs and under a dispositional order of April 18, 1988 Vincent Devone A. was placed in foster care for 12 months.
Extensions of placement were filed in 1988 and 1989 in which the Commissioner reported that Tiffany A. was not compliant with the two prior dispositional orders of the court. On July 11, 1989, the presiding Judge issued an order directing St. Joseph’s Services for Children and Families to file a proceeding to terminate the mother’s parental rights to Tiffany Margo A. and her three siblings and the petitions were filed on September 19, 1989. Service was made by publication and an inquest was held on May 15, 1990. At the conclusion of the fact-finding hearing, the presiding Judge entered a finding of permanent neglect against Tiffany A. That same day the case proceeded to disposition and the Judge terminated Tiffany A.’s parental rights to all the children upon a finding that the children’s best interests would be served if they were freed for adoption *790 by their nonkinship foster parent, Margaret H. Subsequently, petitions to adopt Tiffany Margo A. and two of her siblings were filed in the Surrogate’s Court of Kings County and on February 26, 1992 the adoptions were finalized.
In addition to reviewing the court files for the neglect and termination proceedings, this court read the agency case records from 1987 through 1990. During these years when the children were in foster care, Tiffany A. visited them a total of 14 times. She never enrolled in and completed a drug treatment program nor fulfilled any of the goals of the service plan designed to assist her in having the children returned to her care. According to the information provided by the Administration for Children’s Services in the two reports this court ordered, Tiffany H. has lived with her two siblings in the home of her adoptive mother for the past eight years. Tiffany H. told the caseworker she does not want to live with her adoptive mother any longer. The petitioner reported to the caseworker that Tiffany "came looking for her and complained of not being happy where she is.” She also told the caseworker that the child "has always wanted to be with her and they are more like sisters.” The respondent reported to the caseworker that while she loves Tiffany, she has been having "disagreements with her lately about her curfew and other related problems.” Although she claims to have a good relationship with Tiffany, the respondent is consenting to return custody of Tiffany to her biological mother "before she runs away or [begins to] hang out in the street.”
LEGAL ANALYSIS
The philosophical keystone of child welfare theory, law and practice in New York is a belief that children should grow up "with a normal family life in a permanent home” for this "offers the best opportunity for children to develop and thrive.”[5] Unless the best interests of a child require otherwise, children should remain with or be returned to the home of a natural parent because this is where "the child’s need for a normal family life will usually best be met.”[6] Whether children enter foster care through voluntary placements or child protective proceedings, the "state’s first obligation is to help the family with services to prevent its break-up or to reunite it if the *791 child has already left home.”[7] (Matter of Dale P., 84 NY2d 72, 77 [1994]; Matter of Michael B., 80 NY2d 299, 308-309 [1992].)
Incorporated within this philosophical framework is a recognition of "the special importance of permanency in the life of a child.” (Matter of Gregory B., 74 NY2d 77, 90 [1989]; Matter of Tyriek W., 85 NY2d 774 [1995]; Matter of Peter L., 59 NY2d 513, 519 [1983].) If, in the course of a child’s stay in foster care, it becomes "clear that the natural parent cannot or will not provide a normal family home for the child and when continued foster care is not an appropriate plan for the child, then a permanent alternative home should be sought.”[8] Under New York’s statutory scheme, if a child cannot achieve permanence by returning home to the natural parent, adoption is the alternative means of achieving permanence and "establishing a real home for a child.” (Matter of Malpica-Orsini, 36 NY2d 568, 572 [1975], appeal dismissed sub nom. Orsini v Blasi, 423 US 1042 [1976].) Adhering strictly to these principles, a considerable body of decisional law has evolved preserving the finality of an adoption, protecting the adoptive relationship from uncertainty and disruption, and promoting stability and permanence in the adoptive relationship. (Matter of Robert O. v Russell K., 80 NY2d 254 [1992]; Matter of Sarah K., 66 NY2d 223, 233-234 [1985], cert denied sub nom. Kosher v Stamatis, 475 US 1108 [1986].) In contravention of these judicial precedents, Tiffany A. asks this court to destroy the permanent home and parental relationship her daughter has had with the adoptive mother for the past eight years and return custody of the child to her without reference in her petition to her own past history before the New York County and Kings County Family Courts or any acknowledgment of the significance of their prior orders.
Once Tiffany A.’s parental rights were terminated, she became a legal stranger to the children and they became wards of the State, and once the children were adopted by their foster mother, pursuant to Domestic Relations Law § 117 (1) (a), the natural parent was "relieved of all parental duties toward and of all responsibilities for and shall have no rights over such adoptive children].” In the words of the Court of Appeals, adoption is unlike other custody proceedings because it " 'leaves the parent with no right to visit or communicate with the child, to participate in, or even to know about, any *792 important decision affecting the child’s religious, educational, emotional, or physical development’ * * * For all practical purposes, the parent no longer exists.” (Matter of Ricky Ralph M., 56 NY2d 77, 80 [1982].)
At no time did Tiffany A. come to this court and file a petition, pursuant to CPLR 5015 (a) (1), and seek to vacate her default in the termination proceeding or commence a proceeding in the Surrogate’s Court to set aside the adoption. (Nina M. v Otsego County Social Servs. Dept., 201 AD2d 788 [3d Dept 1994], lv denied 83 NY2d 755 [1994]; Matter of Lucy M., 132 Misc 2d 251 [Fam Ct, Kings County 1986].) Indeed, were it not for the independent actions of her biological child, Tiffany A. would not be in this court now since it was not her wish to have the child back but the child’s desire to return to her that precipitated the filing of the petition presently before the court.
Having been adjudicated an unfit parent three times and two courts having determined on multiple occasions that the children’s best interests would not be served in being returned to their mother, these prior decisions are res judicata[9] on the question of the petitioner’s fitness to parent, her right to custody and what is in the best interests of these children. (Matter of Santosky v Roach, 161 AD2d 908 [3d Dept 1990]; Matter of Lucy M., 132 Misc 2d 251 [Fam Ct, Kings County 1986], supra.)[10] If because of the technical requirements requiring an identity in the cause of action and an identity in the *793 parties, the doctrine of res judicata is not applicable to these facts, the petitioner would still be collaterally estopped from raising these issues in a different cause of action.[11] This biological mother has had all the due process to which she is entitled. She should not be allowed, through the filing of a custody petition six years later, to litigate the same issues once again.
Tiffany A. argues that she has standing to file a custody proceeding under the Family Court Act because, unlike Domestic Relations Law § 70, the Family Court Act does not provide that only a parent may seek "natural guardianship, charge and custody” of a child. Section 651 of the Family Court Act does not similarly restrict the category of individuals who may apply to the court for custody of a child. Consequently, it is her contention that she should be able to file for custody just as any other "third party” and under Matter of Bennett v Jeffreys (40 NY2d 543 [1976]), be given the chance to show that "extraordinary circumstances” exist which warrant depriving the adoptive parent of her custodial rights to the child.
Were biological parents whose parental rights have been ' terminated accorded standing to file a custody petition for an adopted child as a third party and thereby overcome the legal consequences attached to the court’s findings under Family Court Act article 10, Social Services Law § 384-b and Domestic Relations Law § 114 by a showing of "extraordinary circumstances”, the finality of adoptions would be jeopardized forever. The Bennett legal standard is no more appropriate to these circumstances than it is to considerations of the best interests of a child in temporary foster care (Matter of Michael B., 80 NY2d 299, 313, supra). Second, this practice would nullify the strongly worded legislative intent behind Domestic Relations Law § 117 (1) (a) which is to leave the biological parent, after an adoption, with no rights. Third, Bennett (supra) grants standing to a class of third parties (grandparents, aunts, uncles, godmothers and family friends) whose sincere motive is to provide a home for a child and who have not been in court to *794 litigate their custodial interest previously. They are not the fictional "third party” to the child which this petitioner is. Fourth, if successful, this petitioner would regain the very same rights she was previously divested of by virtue of the termination and adoption proceedings, thereby destroying the res judicata effect of the court’s prior judgments of her fitness and the child’s best interests. And finally, custody does not create a permanent parental relationship and does not give the child the security of a permanent home. (Matter of Michael B., supra, at 317; Matter of Peter L., 59 NY2d 513, 519, supra; Matter of Mary Liza J. v Orange County Dept. of Social Servs., 198 AD2d 350 [2d Dept 1993], lv denied 83 NY2d 755 [1994]; Matter of Arnetta S. v Commissioner of Social Servs., 186 AD2d 519 [1st Dept 1992].)
Even if the biological mother were found to have standing to file and pursue this custody proceeding,[12] under Bennett (supra), third parties must make a prima facie showing that "extraordinary circumstances” exist which would trigger an assessment of whether it is in the best interests of Tiffany H. to be removed from her adoptive mother’s custody and returned to her biological mother. Tiffany A.’s petition states nothing which would indicate that she has become a fit parent. She alleges as an "extraordinary circumstance” the mere fact that the child now wishes to live with her. While it is altogether commonplace for adopted children to fantasize about living with a natural parent and altogether commonplace for them to see the real parent as the "good parent” and the adoptive parent as the "bad parent”, these adolescent feelings do not constitute "extraordinary circumstances” of the magnitude suggested by the Court in Bennett. In Matter of Joyce T. (65 NY2d 39, 47-48 [1985]), the Court of Appeals ruled that "[i]n connection with parental termination, in this State, foster care is viewed as a temporary way station to adoption or return to the natural parents, not the purposeful objective for a permanent way of life.” Granting this petitioner standing to file a custody proceeding would *795 render meaningless the entire foster care-termination-adoption process and would convert adoption into a "temporary way station” on the return trip home. Custody and parental rights, as the Court of Appeals has aptly observed, should not be "so unceremoniously run together.” (Matter of Ricky Ralph M., 56 NY2d 77, 80, supra.)
CONCLUSION
For all of the foregoing reasons, the court finds that the petitioner lacks standing to bring this custody proceeding under the Family Court Act. Accordingly, the petition is dismissed.
[Portions of opinion omitted for purposes of publication.]

. Letter, July 25, 1996, from John E. Stupp, Assistant Deputy Counsel, Bureau of Services and Community Development Law, New York State Department of Social Services.

. Statement of Lori Talbert, Esq., transcript, July 30, 1996, at 8, lines 6-12.

. Statement of Lisa A. Marsh, Esq., transcript, July 30,1996, at 10, lines 8-11.

. Mary Ann A., born Aug. 26,1982, and Tiffany Margo A., born Sept. 30, 1980.

. Social Services Law § 384-b (1) (a) (i).

. Social Services Law § 384-b (1) (a) (ii).

. Social Services Law § 384-b (1) (a) (iii); § 358-a (3) (b); Family Ct Act § 1055 (c).

. Social Services Law § 384-b (1) (a) (iv).

. Application of the doctrine of res judicata requires identity of the cause of action and identity of the parties to the action. (9 Carmody-Wait 2d, NY Prac, Judgments § 63:430, at 143.) While the respondent was technically not a party to the termination of parental rights case, she was certainly in privy with the Commissioner of the Department of Social Services, who was a party. Moreover, she was entitled "as a matter of right,” in accordance with Social Services Law § 383 (3), to intervene in the proceeding and to participate in the dispositional hearing after a finding of permanent neglect has been made. (Matter of Sheila G., 61 NY2d 368, 377 [1984]; Matter of Kimberly J., 191 AD2d 984 [4th Dept 1993]; Matter of Stevens, 51 AD2d 877 [4th Dept 1976].)

. In Santosky (supra), the Appellate Division denied the biological parents standing to file for custody of their former son who was adopted at age eight. At age 16, after problems arose between the adoptive parents and the child, he was returned to the custody of the Commissioner on a PINS petition. The Court held that when the biological parents’ rights were terminated they lost not only the right to ever visit or communicate with the child but the right to " 'regain custody of the child’ ” as well (supra, at 908). In Matter of Lucy M. (supra, at 253), the court dismissed a biological mother’s writ of habeas corpus on the ground that "[t]he issue of custody raised here was necessarily subsumed in the prior determination that adoption is in the child’s best interest”.

. While there is an extended body of case law holding that the doctrines of res judicata and collateral estoppel are not applicable to determinations of child custody (Friederwitzer v Friederwitzer, 55 NY2d 89, 94-95 [1982]), this line of cases generally pertains to modifications of previous custodial arrangements between parents of equivalent status. Courts have repeatedly held that these doctrines will not defeat an application to alter a prior custody determination because all too often the "circumstances have so changed that the welfare of a child demands a change in * * * custody.” (Matter of Berlin v Berlin, 21 NY2d 371, 377-378 [1967], cert denied 393 US 840 [1968].)

. The facts of this case are, by no means, the only context in which these petitions will arise should biological parents whose rights have been terminated be permitted to reenter the courthouse in the disguise of a "third party” and file for custody of adopted children whom they have neglected, abused or abandoned in the past. "Open adoption” under Social Services Law § 383-c (2) and (5) (b) (ii), which permit parents to surrender their rights on the condition that they receive postadoption visitation and contact with their children, as well as adoption by kinship foster parents, have set the stage for litigation of this type to become a routine part of the future filings in Family Court.