*737 OPINION OF THE COURT
Marianne O. Mizel, J.
This court is presented with the unusual situation of the proposed readoption of a child by his biological mother. Theresa O., the biological mother of Anthony, born March 9, 1988, voluntarily surrendered her parental rights regarding Anthony on March 13, 2001.
A petition had been instituted against her by the Ulster County Department of Social Services on March 27, 1998 alleging educational and medical neglect of Anthony and her other children. Ms. O. admitted that she was aware that Anthony had been illegally absent from school on days comprising approximately 38% of the total time school was in session. She also admitted that she instructed her children not to talk with their psychiatrists at therapeutic sessions. A dispositional order was entered which placed Ms. O. under the supervision of the Department of Social Services for a year, directed that she participate in and complete specific services, and required her to ensure and encourage the children to attend school.
Person in need of supervision (PINS) petitions had also been filed against Anthony for the same behavior. He was placed on probation and then placed with the Department of Social Services on April 22, 1999 on disposition of a violation petition. Ms. O. continued to experience problems with Anthony’s behavior and voluntarily signed a judicial surrender of her parental rights on March 13, 2001. The Department of Social Services had commenced a termination of parental rights proceeding against Anthony’s biological father, alleging abandonment. Anthony’s biological father also voluntarily signed a judicial surrender of his parental rights on March 13, 2001 and the termination of parental rights petition against him was dismissed. Anthony was subsequently adopted by Arthur R and Maria E, his longtime foster parents.
Maria P and Arthur P filed a PINS petition against Anthony on June 29, 2004. They alleged, among other things, that Anthony left home to visit his biological mother on May 14, 2004 and had not returned home. Theresa O. filed a petition for custody on August 19, 2004, which was dismissed for lack of standing. She filed a petition on October 27, 2004, seeking to be appointed as Anthony’s guardian. In her petition, she alleged that Anthony had been placed in Family House, a respite home for teenagers, by his adoptive parents, who will no longer allow *738 him in their home. She alleged that before Anthony had gone to Family House, he had lived with her for five months. She also alleged that the Es wish to surrender their parental rights regarding Anthony. Submitted with the guardianship petition was the statement of preference required from a minor over the age of 14, indicating that Anthony preferred that Theresa O. be his guardian. Temporary custody was awarded to Theresa O. under the FINS petition filed by the Es. Temporary custody ended when the Es withdrew the FINS petition and it was dismissed on March 22, 2005. Temporary letters of guardianship were issued to Theresa O. on July 6, 2005 and renewed on December 13, 2005. Theresa O. filed an adoption petition on December 13, 2005.
Although none of the parties to these proceedings has raised the issue, the court realized that standing could be problematic and wished to provide a decision as a record that the issue was recognized and addressed. Justice Work had dismissed with prejudice Ms. O.’s petition for custody of Anthony for lack of standing. This court finds that standing should not be a barrier to Anthony’s adoption going forward.
There is a line of cases which stands for the proposition that, once a parent’s rights have been terminated, that parent can have no further right to custody or visitation with the child. (See, e.g., Matter of Adam S., 287 AD2d 723 [2d Dept 2001]; Matter of Santosky v Roach, 161 AD2d 908 [3d Dept 1990]; Matter of T.C. v R.C., 195 Misc 2d 417 [Fam Ct, Kings County 2003].) However, those cases do not apply in the instant situation for two reasons. First, those prior cases were custody petitions filed after termination of parental rights. The rationale for dismissal was founded on res judicata and collateral estoppel. The cases say that because the court has determined that the biological parent is an unfit parent, the biological parent cannot cause this issue to be revisited by filing requests for custody. However, this overlooks the reality that there is no res judicata in custody cases.[1] The court is not prohibited, on the presentation of an appropriately significant change in circumstances, from revisiting the issue of custody, either between parents or between a parent and a third party (Matter of Bennett v Jeffreys, 40 NY2d 543 [1976]). Matter of Tiffany H. (171 Misc 2d 786 [Fam Ct, Kings County 1996]) considered the applicability of Bennett v Jeffreys *739 after the termination of parental rights and a subsequent adoption, and concluded that custody does not create a permanent parental relationship “and does not give the child the security of a permanent home” (at 794). Ms. O. has filed a guardianship petition and an adoption petition, which would potentially create the permanency the court in Tiffany H. identified as lacking in a custody petition.
Second, those prior cases involve situations where the parents’ rights were involuntarily terminated through the finding of permanent neglect. There has been no such determination and involuntary termination in this case. Anthony was freed for adoption by the voluntary surrender of Ms. O.’s parental rights and concurrent surrender of his father’s parental rights. Although a neglect petition had been filed against Ms. O. upon Anthony’s failure to attend school, that behavior continued after he had been adopted by the Es, to the point where the Es also filed a FINS petition against him for this same behavior. The allegations in the 1998 neglect petition were not as horrendous as in other cases this court has seen and would not have been a bar to reunification of the family at that time.
The recent enactment of Domestic Relations Law § 112-b and amendment of related statutes provides a mechanism, effective December 21, 2005, under which the court can approve and order postadoption contact by the biological parent after a voluntary surrender if the court finds such postadoption contact to be in the child’s best interests. The interim report in the Es’ FINS proceeding against Anthony, prepared by the Ulster County Department of Social Services on September 23, 2004, reported that both Maria E and Ms. O. stated that they had had an oral agreement, prior to Anthony’s adoption, that he would be allowed to visit with Ms. 0. after the adoption. Fostadoption contact is now statutorily recognized when the parent has voluntarily surrendered the child for adoption and can be enforced where the court finds enforcement to be in the child’s best interests. These amendments demonstrate that the legislative intent to sever all parental contact through adoption, cited by Matter of Tiffany H. (171 Misc 2d 786, 791-792 [Fam Ct, Kings County 1996])[2] as its rationale for denying the parent’s custody petition, is no longer applicable to contact after a voluntary surrender.
*740 Ms. O.’s petition alleges that the Ps no longer wish to continue as Anthony’s parents and refuse to have him in their house. The Probation Department’s predisposition investigation prepared November 3, 2004 on the PINS petition filed by the Ps confirms this as the Ps’ position and recommends that Anthony be allowed to return to live with his mother. It cites that although Ms. O. has had problems with each of her children, her children are essentially grown. The report notes that Anthony was of an age where he could leave school but he has not chosen to do so. A home study, completed March 1, 2005, reported that Anthony was still in school, although his attendance could be better, and found nothing contraindicating Anthony’s continued residence with his biological mother. If Ms. O. were not interested in resuming responsibility for Anthony, he would be returned to the foster care system or he would be homeless.
Accordingly, this court determines that the prior proceedings regarding Anthony and his family do not preclude an application by his biological mother to resume a permanent parental relationship toward Anthony. Ms. O. has filed a petition to adopt Anthony. Ms. O. has submitted the necessary forms and fingerprint cards for a State Central Registry report of child maltreatment reports and for a Criminal Justice Services report of criminal activity. Provided that those reports reveal nothing additional to the facts already known to the court due to its prior involvement with the family, they should not be a bar to further prosecution of the pending petitions.

. “The only absolute in the law governing custody of children is that there are no absolutes.” (Friederwitzer v Friederwitzer, 55 NY2d 89, 93 [1982].)

. The court in Tiffany H. cited Matter of Ricky Ralph M. (56 NY2d 77, 80 [1982]) as showing this intent.