OPINION OF THE COURT
Dandrea L. Ruhlmann, J.
Does a biological mother who previously surrendered her children have standing to bring a Family Court Act article 6 custody petition against the children’s adoptive parents when the adoptive father has admitted to sexual abuse of one daughter?
Procedural History
Petitioner Beverly L. (biological mother) voluntarily surrendered her parental rights to her two daughters Brooke H. (DOB: 2000) and Kendall H. (DOB: 2001) and a son Zachary H. (DOB: 2003) on January 13, 2011. She concurrently executed attachment A to a judicial conditional surrender (post-surrender agreement) reserving the right to visit her biological children and since has done so consistently.
By orders to show cause filed on September 25, 2015 and December 2, 2015, respectively, biological mother sought *417 custody of her children because of what she referred to as a “failed” adoption by respondents (adoptive parents). Biological mother alleges extremely disturbing incidents of both sexual abuse of her second daughter Kendall by respondent James H. (adoptive father), the children’s adoptive father, and her eldest daughter Brooke by an unrelated third party. Biological mother further claims her son Zachary H. was the target of bullying in the adoptive home. Respondent Ann H. (adoptive mother) moved to dismiss biological mother’s petition for lack of standing. On February 10, 2016, this court after oral argument granted adoptive mother’s motion to dismiss. This decision and order supplements that determination.
Adoptive Family in Crisis
Adoptive father is currently in a New York State correctional facility after purportedly confessing to sexually abusing adoptive daughter Kendall for the past year. Other charges have been filed against adoptive father for sexual abuse of Kendall in an adjoining county. Biological mother further alleges that other boys in the adoptive parents’ home have choked and pulled a knife on Zachary.
The eldest daughter Brooke was sexually abused by a 17-year-old third-party acquaintance while in the sole care of adoptive mother. At the time of such abuse, the second daughter Kendall was dating the brother of the perpetrator. Only after appearing before this court did adoptive mother seek an order of protection to ensure that the perpetrator stays away from both girls. Adoptive mother wants to keep her family together and contends she plans on divorcing her husband, adoptive father.
Adoption’s Stronghold
Biological mother voluntarily surrendered her parental rights to the children and the adoptive parents adopted them. Adoption is understandably a fortress that is nearly impossible to penetrate. Once the children were adopted biological mother was “relieved of all parental duties toward and of all responsibilities for and [had] no rights over such adoptive child [ren]” (Domestic Relations Law § 117 [1] [a]). “[L]egal adoption . . . [w]hen it is sanctioned ... ‘is both total and irrevocable’ ” (Matter of Ricky Ralph M., 56 NY2d 77, 80 [1982], quoting Lassiter v Department of Social Servs. of Durham Cty., 452 US 18, 39 [1981, Blackmun, J., dissenting]).
*418 Family courts are loathe to disrupt a child’s adoption, regardless of whether a biological parent’s rights have been terminated or surrendered (Matter of Tiffany H., 171 Misc 2d 786 [Fam Ct, Kings County 1996] [biological mother denied standing to bring a custody action after her rights were terminated, despite that all parties and the 16-year-old subject child agreed with her application]; Matter of T.C. v R.C., 195 Misc 2d 417, 419 [Fam Ct, Kings County 2003] [“natural mother does not have standing to seek custody of a child for whom her parental rights were terminated”]; Matter of Theresa O. v Arthur P., 11 Misc 3d 736 [Fam Ct, Ulster County 2006] [biological mother’s petition for custody was dismissed for lack of standing]). In the Matter of Rasheed A. (2007 NY Misc LEXIS 5853, *25, 238 NYLJ 24 [Fam Ct, Kings County, July 6, 2007, Goldstein, Ref., G19009/06]) the court emphasized: “If biological parents could readily seek custody of their children . . . this could wreak havoc . . . undermining] the stability of the children and making] permanency illusory.” Family courts thus are diligent in “protecting the adoptive relationship from uncertainty and disruption” (Tiffany H., 171 Misc 2d at 791).
The courts, however, have reached different conclusions as to whether a biological parent whose rights either have been terminated or surrendered has standing to seek custody. In Tiffany H., the court held it was against public policy to grant standing to a biological mother whose parental rights were terminated because she had not sought “to vacate her default ... or commence a proceeding in the Surrogate’s Court to set aside the adoption” (id. at 792). If biological parents were “accorded standing to file a custody petition for an adopted child as a third party and thereby overcome the legal consequences attached to the court’s findings under . . . Domestic Relations Law § 114 [order of adoption] . . . the finality of adoptions would be jeopardized forever” (id. at 793).
Both biological mother and adoptive mother rely on Matter of Rasheed A. in support of their opposing positions. In Rasheed A., the court found a biological mother (whose parental rights had been terminated) had standing to seek guardianship of her son who had been adopted by her cousin. The only alternative to living with biological mother was “placement in a locked facility [due to the child’s severe ADHD]” (Rasheed A, 2007 NY Misc LEXIS 5853, *5-18). The Rasheed A. court devised a stringent four-pronged test, first requiring that the parties either consent to the arrangement or the biological parent *419 establish extraordinary circumstances. The Rasheed A. court further required a biological parent to outline “certain unusual and compelling circumstances” by (1) demonstrating that the circumstances which led to the placement of the child in foster care had been eliminated, (2) proving by substantial evidence that the child would suffer serious harm if custody was not awarded to him; and (3) showing he sought to adopt the child thus giving that child permanency (id. at *25-26).
While such analysis is instructive, the court must scrutinize whether a showing of extraordinary circumstances is sufficient to overcome an adoption on a case by case/ad hoc basis. This court envisions a myriad of circumstances whereby a biological parent might achieve standing if found fit to parent; specifically, if the adoptive parent’s own rights are either terminated or surrendered or such adoptive parent suffers incarceration, a life threatening illness, severe disability or even death prior to his adoptive child reaching the age of majority. A biological parent who previously surrendered a child might then be in the best position to nurture, care for and provide the child permanency.
In Theresa O., after a biological mother voluntarily surrendered her parental rights and then filed a custody petition, the court found biological mother had standing to seek a guardianship and/or adoption (despite an earlier court’s dismissal) as this “would potentially create . . . permanency” for the child (Theresa O., 11 Misc 3d at 739). The Theresa O. court specifically distinguished a parent who executed a surrender from a parent whose parental rights were terminated after trial. Here biological mother surrendered her parental rights, reserving the right, inter alia, to visit her children a minimum of six times a year.
Extraordinary Circumstances
After surrendering her parental rights, biological mother became a legal stranger to her children (see Domestic Relations Law § 117 [1] [a]). As between a parent and a non-parent, a parent has a superior right to custody that cannot be denied unless the non-parent establishes that the parent has relinquished that right due to surrender, abandonment, persisting neglect, unfitness, or other like extraordinary circumstances (see Matter of Male Infant L., 61 NY2d 420 [1984]; Matter of Bennett v Jeffreys, 40 NY2d 543 [1976]; Matter of Vincent A.B. v Karen T, 30 AD3d 1100 [4th Dept 2006], lv denied 7 NY3d *420 711 [2006]; Matter of Ruggieri v Bryan, 23 AD3d 991 [4th Dept 2005]).
Only after a threshold showing of “extraordinary circumstances” does a non-parent third party like biological mother have standing to seek custody (see Matter of Tucker v Martin, 75 AD3d 1087 [4th Dept 2010], appeal withdrawn 15 NY3d 891 [2010] [deceased-mother’s boyfriend had standing and proved both extraordinary circumstances and that it was in the child’s best interests that child reside with him]; Matter of Deborah E.C. v Shawn K., 63 AD3d 1724 [4th Dept 2009], lv denied 13 NY3d 710 [2009] [incarcerated father’s wife showed extraordinary circumstances triggering best interests of child test]; Matter of Stent v Schwartz, 133 AD3d 1302 [4th Dept 2015], lv denied 27 NY3d 902 [2016] [child’s half brother had standing and proved both extraordinary circumstances existed and that it was in the child’s best interests that child reside with him]; Matter of Amy H. v Chautauqua County Dept. of Social Servs., 13 AD3d 1048 [4th Dept 2004], amended on rearg 2005 NY Slip Op 00923 [4th Dept 2005] [non-family member nurse had standing to seek custody of a child if extraordinary circumstances exist]).
No doubt biological mother is correct that the children’s adoption by adoptive father has likely “failed.” There is an open child protective investigation against the adoptive parents related not only to adoptive father’s admission about the sexual abuse of Kendall, but also about alleged misconduct by adoptive father against Brooke.
This court lacks authority to direct the Monroe County Department of Human Services to file a Family Court Act article 10 abuse/neglect petition against the adoptive parents. This court did require the Department to report on the results of the Family Court Act § 1034 investigation. After appearing before this court, adoptive mother sought an order of protection to ensure that the 17-year-old third-party perpetrator who sexually assaulted Brooke stays away from both girls. As the adoptive children have suffered severe abuse and its attendant trauma, this court trusts the Department is addressing the children’s needs, including contemplating preparing an article 10 petition. If not, the Attorney for the Children should consider such filing (see Matter of Anne P.C. v Steven P., 17 Misc 3d 1107[A], 2007 NY Slip Op 51858[U] [Fam Ct, Monroe County 2007]). If a petition is filed or child protective preventive services begun, adoptive mother should be afforded the *421 same opportunity to work with the Department as any other parent.
Adoptive mother wants to keep her family intact. She contends she has taken steps to divorce her husband, adoptive father. The children and adoptive mother are attending counseling. Adoptive father is in a New York State correctional facility for his crimes against Kendall and possibly Brooke. According to the Attorney for the Children, the children want to spend more time with their biological mother, yet still want to live with their adoptive mother.
Despite maintaining a close relationship with the children and even though the children’s adoptive family is in crisis, biological mother does not now have standing to file for custody as a non-parent, third party based upon “extraordinary circumstances” (see Bennett, 40 NY2d 543; see also Matter of Kareem W. v Family Focus Adoption Servs., Inc., 24 Misc 3d 1243[A], 2009 NY Slip Op 51856[U] [Fam Ct, Queens County 2009]; Tiffany H., 171 Misc 2d at 793-794).
Future Standing
Biological mother’s application for custody is premature at best. Significantly, the Attorney for the Children does not support biological mother’s petition for custody. Despite the abuse and concomitant trauma the children suffered in their adoptive home, they want to continue living with their adoptive mother. Adoptive father, incarcerated, is out of the family home. Neither res judicata nor collateral estoppel apply to biological parents seeking custody. “The court is not prohibited, on the presentation of an appropriately significant change in circumstances, from revisiting the issue of custody, either between parents or between a parent and a third party” (Theresa O., 11 Misc 3d at 738 [citations omitted]). “The only absolute in the law governing custody of children is that there are no absolutes” (id. at 738 n 1, quoting Friederwitzer v Friederwitzer, 55 NY2d 89, 93 [1982]).
Post-Surrender Agreement
The “legislature has created one exception to [the] general bar against court-ordered postadoption contact in termination cases; however, it applies only to parents [like biological mother here] who voluntarily have surrendered their rights . . . Only these parents may ‘reserve the right to postadoption visitation and communication’ ” (see Kareem W., 2009 NY Slip Op *422 51856[U], *6-7, citing Matter of Rebecca O., 46 AD3d 687, 688 [2d Dept 2007]). The only rights biological mother retained are set forth in the post-surrender agreement pursuant to Domestic Relations Law § 112-b. Biological mother, inter alia, has the right to visit her children a minimum of six times a year. “Domestic Relations Law § 112-b and amendment of related statutes provides a mechanism . . . under which [a] court can . . . order postadoption contact by [a] biological parent after a voluntary surrender” (Theresa O., 11 Misc 3d at 739). Undeniably biological mother has taken full advantage of her rights under the post-surrender agreement and has consistently visited the children. Adoptive mother too had been generous in allowing visits beyond what is required under the post-surrender agreement. Biological mother has been afforded each and every right secured under her agreement.
Now, therefore, it is adjudged that biological mother, petitioner Beverly L., does not have standing to pursue custody; and it is further ordered that petition is dismissed without prejudice.