OPINION OF THE COURT
Rachel E. Tanguay, J.
These parties are not before this Family Court for the first time. On September 24, 2013, the Rockland County Family Court (Dean Richardson-Mendelson, Court Attorney Ref.) issued a decision and order granting a motion to dismiss the petitioner A.F.’s previously filed custody petition. Notably, that decision and order predated the Court of Appeals decision in Matter of Brooke S.B. v Elizabeth A.C.C. (28 NY3d 1 [2016]), *1111 which this court has concluded changed the legal landscape as applied to the facts in this particular case. In 2013, Referee Richardson-Mendelson made the following factual findings relative to the parties, factual findings that are relevant to the instant case:
“The parties became registered domestic partners on August 25, 2005. Sometime thereafter, the parties decided to have children together, and they mutually agreed that K.H. would conceive by artificial insemination by an unknown sperm donor. . . . The parties remained as an intact couple until their separation in July of 2011.
“The fact that the parties considered each other ‘parents’ of the child, and held each other out to the world as parents of the child, prior to this litigation is undisputed. For example, in KH.’s child support petition [which was subsequently withdrawn], she gave numerous examples of how the parties jointly held themselves out to [be] the ‘parents’ of the children. K.H. acknowledged that A.F. was in the delivery room for the births of both children, and both children have A.F.’s last name. The parties have celebrated the birthdays of the children with both of their respective families and friends, and the children refer to A.F.’s parents as Grandma and Pop Pop and A.F.’s brother as their uncle. Each party traditionally claimed one child on their tax return as a dependent, A.F. provided health insurance for the children, and, after the parties [sic] separation, A.F. paid for V2 of private school tuition, V2 of the babysitting fees and V2 of all extracurricular activities.” (Decision and order dated Sept. 24, 2013, slip op at 2-4.)
Ultimately, Referee Richardson-Mendelson dismissed the petitioner’s prior custody petition, finding that under prevailing law at that time, A.F. had not established a prima facie case for extraordinary circumstances under the seminal case for when a non-parent can seek standing to obtain custody or visitation with a child, Matter of Bennett v Jeffreys (40 NY2d 543 [1976]). Moreover, the prevailing case law in 2013 relative to the facts in this case, as held by the Court of Appeals in Matter of Alison D. v Virginia M. (77 NY2d 651 [1991]), and reaffirmed once again in Debra H. v Janice R. (14 NY3d 576 [2010]), specifically precluded a non-biological, non-adoptive person who acted as a parent towards a child from having *1112 standing to seek custody or visitation with that child absent a valid marriage between the parties, which was not available in New York in 1991 or 2010, or absent an adoption of the child by the non-biological party.
In this particular case, the Referee’s decision was affirmed by the Appellate Division, Second Department. (Matter of A.F. v K.H., 121 AD3d 683 [2d Dept 2014].) It is undisputed that following the dismissal of A.F.’s custody petition in 2013, there was no contact at all between the children and A.F. In fact, K.H. obtained an order permitting her to legally change the surname of the two children at issue to her surname without the knowledge of A.F. Once the Court of Appeals issued the decision in Brooke, A.F. re-filed her custody petition with this court, as well as sought an order of parentage, arguing that the holding in Brooke automatically conferred standing on her to seek custody and/or visitation with the two subject children. With the request for an order of parentage in addition to an order of custody/visitation, the Referee was no longer able to hear the matter and the case was transferred to a family court judge. At the first appearance on this case, K.H. objected to A.F.’s standing and moved to dismiss her application, which the Attorney for the Children (AFC), who also represented the children in the prior litigation, supported. The court issued a decision on January 3, 2017 on the motion to dismiss, essentially concluding it was not bound by stare decisis, meaning the Appellate Division, Second Department’s prior holding in this case (121 AD3d 683). This court specifically stated how the Court of Appeals in Brooke also grappled with the issue of whether it was bound by stare decisis given its prior holding in Matter of Alison D. v Virginia M. (77 NY2d 651 [1991]). However, the Court of Appeals, with the late Justice Abdus-Salaam taking great care to reason how stare decisis should “generally” bind the Court to prior holdings in “future cases,” was instructive to this court. (Brooke, 28 NY3d at 23.) The Court of Appeals had stated, “But in the rarest of cases, we may overrule a prior decision if an extraordinary combination of factors undermines the reasoning and practical viability of our prior decision.” {Id.) This court noted how the Court of Appeals, the final arbiter for the interpretation of the law in our state, issuing decisions with far-reaching effects on countless people, felt compelled to overrule itself and not be bound by stare decisis in a case with a set of facts very similar to the case at bar. Given the gravity of that choice, this trial *1113 court, holding the power and responsibility to hear testimony and evidence which will determine the lives and future relationships children have with people in their life, did not find it proper, given the holding in Brooke, to dismiss petitioner’s petition on the basis of stare decisis.
Moreover, K.H. had also sought dismissal of A.F.’s most recent application on the basis that she was precluded by the doctrine of res judicata. This court held that custody matters are generally not subject to that doctrine. (See Matter of Theresa O. v Arthur P., 11 Misc 3d 736 [Fam Ct, Ulster County 2006]; Matter of Frost v Wisniewski, 126 AD3d 1305, 1306 [4th Dept 2015] [holding that the trial court erred in dismissing a paternity petition on the basis of res judicata, because “it is the child’s best interests which are of paramount concern” (internal quotation marks and citations omitted)].) Custody and parenting time are issues always subject to modification and adjustment as the needs of children and blended families evolve. Certainly, litigants are not permitted to adjust or modify orders without demonstrating the threshold requirement of a change of circumstances since entry of the last order. However, while there is not a factual change in circumstances here, per se, that would form the proper basis for modification of an existing order, there is certainly a change in circumstances,[1] to wit: the Court of Appeals has recently determined that there is now a pathway for non-biological, nonlegal parents to achieve standing in a custody and visitation case. This court noted in its decision on the motion to dismiss that this was a significant change in legal circumstances since this court was asked to determine whether petitioner had standing in 2013. The Court of Appeals noted that the effects Alison D. had upon certain families and especially children were almost chilling.
“[I]n the years that followed, lower courts applying Alison D. were forced to . . . permanently sever strongly formed bonds between children and adults with whom they have parental relationships. By limiting their opportunity to maintain bonds that may be crucial to their development, the rule of Alison D. has fallen hardest on the children.” *1114 (Brooke, 28 NY3d at 24 [internal quotation marks, citation and brackets omitted].)
Thus, this court did not dismiss A.F.’s petition on the basis of res judicata.
The parties attended a conference with this court on January 11, 2017, where the court wanted to confirm whether the facts relating to the conception and the intention of the parties to raise the children jointly were at issue, even though the court had made prior findings in 2013. The parties conceded that the facts were uncontroverted; this court concluded that the facts conferred standing on A.F. to seek custody and visitation pursuant to Brooke. At that conference, the court scheduled a best interests hearing for May 5, 2017. The parties arrived at court on May 5, 2017 with a fully executed stipulation resolving custody and access to the children.[2] However, the parties could not agree on whether A.F. was entitled to an order of filiation/parentage, with A.F. arguing primarily that this court should grant such an order upon the finding that she had standing as a “parent” under Domestic Relations Law § 70 to seek custody and visitation. K.H. and the AFC argued against this court issuing such an order, averring that the paternity statutes do not permit a same-sex individual to obtain an order of filiation, and that the holding in Brooke limits this court to conferring standing to a non-biological, nonlegal parent to seek custody and visitation, but not all of the rights, obligations and privileges that are associated with being a legal parent of a child.
Therefore, under current law, this court must determine whether it is empowered to issue an order of filiation/parentage in favor of a non-biological, non-adoptive parent whom it has determined has standing to seek custody and visitation of children conceived by the biological parent pursuant to the holding in Brooke. It is clear that the Court of Appeals expanded the definition of “parent” beyond its prior definition of biological and legal parents, as it established that “Domestic Relations Law § 70 permits a non-biological, non-adoptive parent to achieve standing to petition for custody and visitation . . . .” {Brooke, 28 NY3d at 27.) However, the Court grappled with *1115 determining the “limited circumstances in which such a person has standing as a ‘parent’ under Domestic Relations Law § 70.” (Id. [citations omitted].) Specifically, the Court rejected “a test that will apply in determining standing as a parent for all non-biological, non-adoptive, non-marital ‘parents’ who are raising children.” (Id.) Instead, the Court opted to deal with the narrowly tailored factual circumstances of the case before it, where a same-sex couple had intended to conceive and raise a child together, absent any legal or biological ties between one “parent” and the child. Moreover, the Court in Brooke wrote, “[W]e stress that this decision addresses only the ability of a person to establish standing as a parent to petition for custody or visitation . . . .” (Id. at 28.)
At first blush, it would appear that the Court of Appeals in Brooke was attempting to limit its holding to conferring standing to a party only, as argued by respondent and the AFC. However, it is extremely noteworthy that the Court of Appeals chose to confer standing by broadening the definition of “parent” to include a non-biological, nonlegal “parent” under certain circumstances. Moreover, the Court engaged in a thorough analysis of the evolution of case law and statutes, including the Marriage Equality Act, ironically having been enacted the same month and year when the parties in this case separated, July 2011. Judge Pigott, who concurred with the majority opinion, correctly stated that
“[s]ame-sex couples are now afforded the same legal rights as heterosexual couples and are no longer barred from establishing the types of legal parent-child relationships that the law had previously disallowed. Today, a child bom to a married person by means of artificial insemination with the consent of the other spouse is deemed to be the child of both spouses, regardless of the couple’s sexual orientation.” (Brooke, 28 NY3d at 32 [Pigott, J., concurring] [citations omitted].)
Whether conferring standing upon an individual to seek custody or visitation of a child as a “parent” within the meaning of Domestic Relations Law § 70 translates into conferring legal status as a parent to that child under the circumstances that exist in this case is the question that must be resolved by this court. In 2014, Justice Dollinger confronted a similar issue in Wendy G-M. v Erin G-M. (45 Misc 3d 574 [Sup Ct, Monroe County 2014]). Of significant note, this case was decided before *1116 the Court of Appeals issued the Brooke decision. The two women in Wendy G-M. were at odds with each other about whether the non-biological, non-adoptive mother was the legal parent of the subject child; the parties had been married in another state before New York enacted its Marriage Equality Act. (45 Misc 3d at 574.) In reviewing the public policy which “strongly favors the legitimacy of children” (45 Misc 3d at 576-577), the case law from the Court of Appeals as of that time relating to Domestic Relations Law § 70 and the meaning of the word “parent,” the legislative, case law history and statutory authority relative to artificial insemination, as well as the recent passage of the Marriage Equality Act, Justice Dollinger concluded that the “non-biological spouse is a parent of this child under the common law of New York as much as the birth mother.” (Wendy G-M., 45 Misc 3d at 595-596.) Here, the parties were not legally married in another jurisdiction, and same-sex marriage was still not legal in New York during the time the parties were together. But the parties did have a valid, registered domestic partnership for approximately six years. This action on the part of A.F. and K.H. certainly evidences their intent to be legally recognized as a couple, as close to a legal family structure that was available in New York to same-sex couples between 2005 and 2011, when the parties were in a domestic partnership. Further, in Wendy G-M., the parties only lived with each other for one week after the child’s birth before they separated. (45 Misc 3d at 577.) Here, the parties conceived two children while still an intact couple. So there was undoubtedly a family structure for a period of time that included both A.F. and K.H. as a couple, two parents to the children in one household.
This case highlights the serious dilemma that faces a narrow, defined group of people: separated same-sex couples, such as A.F. and K.H., who are in an almost limbo-like state, having been unable to legally marry when they were an intact couple, but who were clearly partnered, and who undeniably sought to birth and rear children jointly as a family, but who now have no statute available to them that allows the non-biological parent to seek an order of filiation over the objection of the other biological parent. Heterosexual couples caught in that web have article 5 of the Family Court Act available to them, and can engage in contested paternity proceedings with the court being empowered to determine who the two legal parents of a child are, regardless of whether the parties agree on that issue. *1117 “[T]here is no statutory provision providing for a declaration of maternity . . . (T.V. v New York State Dept. of Health, 88 AD3d 290, 301 [2d Dept 2011].) But as the Appellate Division pointed out,
“[T]here is also no provision prohibiting such declaration. . . . [T]he fact that article 5 of the Family Court Act addresses only ‘Paternity Proceedings’ rather than maternity proceedings . . . neither deprives the Family Court nor the Supreme Court of jurisdiction to issue an order of maternity. Such an approach is consistent with General Construction Law § 22, which mandates that the construction of statutes which contain ‘gender indicative words’ should be deemed to refer to ‘both male or female persons.’” (Id. [citation omitted]; see also Matter of H.M. v E.T., 14 NY3d 521, 527 [2010] [stating, “Family Court also has the inherent authority to ascertain in certain cases whether a female respondent is, in fact, a child’s parent.” Although, the Court notes that it was reviewing such authority pursuant to article 4, as it had “no occasion to decide whether it is also . . . within that court’s article 5 jurisdiction”].)
As stated, no such statutory scheme is yet available for same-sex couples who were not legally married but chose to become partners, bring children into the world and raise them with each partner being a parent to that child. This seems manifestly unfair not only to the non-biological parent, but to the children who deserve to have a two-parent family when same was intended at their conception. “[T]he consistent purpose of serving children’s best interests by providing them with two responsible parents, rather than one, requires that paternity proceedings . . . should be made available to lesbian . . . [ ]mothers.” (Matter of Sebastian, 25 Misc 3d 567, 583 [Sur Ct, NY County 2009].) The majority in Brooke concluded its opinion by stating, “We will no longer engage in the deft legal maneuvering necessary to read fairness into an overly-restrictive definition of parent that sets too high a bar for reaching a child’s best interest and does not take into account equitable principles.” (Brooke, 28 NY3d at 26 [internal quotation marks omitted].) This court will also not allow legal maneuvering that permits A.F. to be a “parent” for purposes of custody, visitation and child support, but without more. It is simply inequitable, and not consistent with prevailing common law as set forth herein.
*1118 Based on the foregoing, it is ordered that petitioner’s petition seeking an order of filiation/parentage for the two subject children in this case is hereby granted and the court shall issue an order of filiation for each child listing A.F. as their legal parent forthwith.

. The court did not find that petitioner’s petition was a modification petition, or that it was alleging a change of circumstances. The court is simply-attempting to emphasize the fluidity and malleability of custodial issues, ones that are frequently subject to modification for a variety of factual reasons. In this instance, there happens to be a legal change that has a direct impact on this individual case.

. Of important note, these parties stipulated that they were waiving their rights to appeal this court’s determination that A.F. had standing to seek custody or visitation of the subject children. Any appeal sought of this order would be limited to this court’s legal determination of whether A.F. is entitled to an order of filiation/parentage.